LAND, J.
The plaintiff sued to recover $3,390.21 as damages for the alleged failure and refusal of the defendant to deliver certain lumber pursuant to a contract of date September 26, 1904, and for the further sum of $868.65 for extra expenses of inspectors incurred by reason of defendant’s failure to deliver lumber in quantities of 100,000 feet, and for the expense of an inspector for instructing defendant’s mill men in getting out lumber for export.
Defendant’s answer was a general denial, followed by averments of breach of contract on the part of the plaintiff, and a reconventional demand for $5,000 damages for the alleged refusal of the plaintiff to take lumber *195 at various times of the grade and quantity called for by the contract.
After a lengthy trial, judgment was rendered in favor of the plaintiff for the sum of $3,090.21, with legal interest from January 1, 1906, and rejecting defendant’s demand. in reconvention. Defendant has appealed.
Plaintiff and appellee’s answer, praying for an .amendment of the judgment, was filed on the day before that fixed for the argument, and comes too late. Such an answer must be filed “at least three days before that fixed for the argument.” Code Prac., art. 890.
It appears that prior to September’ 26, 1904, the plaintiff had given seven different orders for lumber, which had been accepted by the defendant, but had not been filled. On that date the defendant addressed a communication to the plaintiff, confirming a verbal agreement of the same date made between the parties with regard to said orders. On three of them the time of delivery was extended until November 15, 1904, on three others until December 15, 1904, and on another until March 1, 1905. The agreement contains the following stipulations:
“I herewith undertake to have all of these orders ready for shipment as per orders at the time stated, failing which I agree to refund you any difference in price which you may have to pay in excess of prices as per orders in buying this stock elsewhere. I also agree to advise you 15 days ahead of time as above in case I should not be able to fill all or part of these orders. You will have to use all endeavors in case of my failure to supply as agx’eed to buy this stock at the cheapest possible prices. The difference thus ascertained between the prices you are paying now and those at which you are buying elsewhere will be paid by me on demand.”
Plaintiff testified that the shortage on orders 140, 144 and 152 was 383,565 feet, and that the shortage on orders 104 and 145 was 174,033 feet. Plaintiff filed an exhibit showing that he purchased 383,889 feet of 11-inch and up lumber to fill this shortage at a cost of $10,072.29, thereby losing $2,010.61 in the difference in prices. Plaintiff filed another exhibit showing purchases of 128,288 feet of 16 primes at $2,885.56, thereby losing $704.60 in the difference in prices.
Plaintiff testified that he had contracted to sell 50,000 feet of 1x4 lumber, and could not comply with his contract by reason of defendant’s failure to deliver a like quantity under his contract, thereby sustaining a.loss of $375.
It is an undisputed fact that defendant failed to deliver over 500,000 feet of lumber pursuant to his contract of September 26, 1904. His liability for such failure is covered by the following stipulation of the agreement:
“I agree to refund to you any difference in prices which you may have to pay in excess of prices as per orders in buying this stock elsewhere ”
This is the measure of damages fixed by the agreement for defendant’s failure to fill the orders on the dates specified, and is the law between the parties. As plaintiff did not purchase any 1x4 lumber to fill the shortage of 50,000 feet, his claim for loss of profits on this item should have been rejected.
The item 383,565 feet of 11-inch and up lumber the petition claims as a shortage on orders 140, 144, and 152. In his exhibit plaintiff assumes that this shortage was on order 152 at $21 per M. The three orders amounted to 560,000 feet of lumber. According to the petition 176,435 feet was delivered, leaving a shortage .of 383,565 feet. The orders called for lumber as follows:
No. 140, 60,000 feet at $21 per M;
No. 144, 100,000 feet at $22 per M; and
No. 152, 400,000 feet at $21 per M.
As the petition alleges that the entire shortage was on the three orders, it should be imputed proportionately. The result is that 31,516 feet must be deducted from order No. 144, leaving a shortage of 68,484 feet, and a *197 ■money difference of $1 per M, or $68.48. It is pointed out that plaintiff recovered judgment based on a shortage of 383,889 feet, while his petition alleged a shortage of only 383,565. As plaintiff cannot recover more than he sued for, the difference of $8.49 should also be deducted.
.The main legal contention of the defense is based on the proposition that the plaintiff cannot recover damages because, after the failure of the defendant to fill the orders, the plaintiff insisted on the performance of the contract.
It is true that, after the defendant had failed to deliver the lumber on the dates specified in the contract, the plaintiff continued to demand the delivery of lumber and the defendant continued to promise performance. Assuming that the plaintiff gave the defendant further time to deliver the lumber, we do not think that this extension of the term precluded the plaintiff from purchasing lumber at the expense of the defendant under the terms of their contract.
There were seven orders for lumber, constituting seven different contracts, and the agreement of September 26, 1904, extended the dates of delivery. On every subsequent failure to deliver on time, the plaintiff acquired the right to purchase elsewhere and to charge the defendant with the difference in prices. From the beginning plaintiff notified the defendant that he would. exercise this right, and in December, 1904, purchased lumber to fill a shortage in delivery. The defaults in delivery were continuous, and from time to time durmg the year 1905 plaintiff purchased lumber to partially fill the shortages. At all times there was lumber due the plaintiff over and above the amounts purchased by him, and in January, 1906, when the defendant refused to make further deliveries, there remained over 72,000 feet of lumber not covered by purchases, and due under the contract.
The purchases made by the plaintiff inured to the benefit of the defendant, as the lumber market was steadily rising. The evidence tends to show that in January, 1906, when defendant refused to deliver any more lumber under his contracts, the market price was much higher than it was during the year 1905.
We agree with the district judge that there is no merit in defendant’s reconventional demand for damages based on the plaintiff’s alleged breaches of the' contract. Defendant was in default from the very beginning. He pleaded time after time his inability to deliver the lumber pursuant to his contracts. Plaintiff was anxious to get the lumber, as he needed it for export, and the market was steadily rising. It is not very probable that plaintiff, under the circumstances, refused to receive lumber within the specifications of the contracts. The trial judge decided against the defendant on his reconventional demand, and we see no good reason to reverse his judgment on this point.
It is therefore ordered that the judgment appealed from be amended, by reducing its amount from $3,090.21 to $2,638.24; and it is further ordered that, as thus amended, the said judgment be affirmed, costs of appeal to be paid by the plaintiff.
PROVOSTY, J., takes no part, not having heard the argument.