(59 South. 984.)

No. 18,780.

LOUISIANA LAND CO. v. BLAKEWOOD et al.

(March 11, 1912. On Rehearing, Nov. 4, 1912.)

*(Syllabus by Editorial Staff.)*

1. ADVERSE POSSESSION (§ 114*) — PRESCRIPTION—EVIDENCE—SUFFICIENCY.

Evidence *held* to show that the entire river front of three sections had been continuously and uninterruptedly in the actual peaceable possession of the present occupants and their authors in title for more than 40 years, so that the prescription of 10 and 30 years was established.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682–683, 685, 686; Dec. Dig. § 114.*]

2. TENANCY IN COMMON (§ 13*)—JOINT OWNERSHIP.

Where one and his heirs possessed land under title calling for a joint ownership, their possession was in accordance with their title, and was not for themselves exclusively, but for themselves and their cotitularies.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 28, 29; Dec. Dig. § 13.*]

3. TAXATION (§ 788*)—TAX TITLE—VALIDITY.

A tax title, made prima facie valid by statute and the Constitution, must be given effect until some person who has standing for contesting it, either because of legal title acquired from the former owner or by prescription, or because of his rights resulting from mere possession attacks it.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1555, 1557, 1559–1569; Dec. Dig. § 788.*]

4. ADVERSE POSSESSION (§ 97*) — EXTENT OF POSSESSION—COLOR OF TITLE.

The principle that possession of a part of a tract is possession of the whole applies when the possession has been under title calling for the whole, and does not apply where the possession has been without title, in which case the possessor cannot acquire by prescription beyond the limits of actual occupancy.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 537–541; Dec. Dig. § 97.*]

5. TAXATION (§ 730*)—TAX SALES—TITLE ACQUIRED.

Where a tax sale, under which plaintiff in a petitory action claims, was one for an undivided half interest in every part of a tract, plaintiff could recover no greater interest in a part merely because the half interest in another part had been cut off by prescription.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1463; Dec. Dig. § 730.*]

6. REAL ACTIONS (§ 7*)—PETITORY ACTIONS—TITLE OF PLAINTIFF.

A plaintiff in a petitory action must recover on the strength of his own title, and not on the weakness of that of his adversary.

[Ed. Note.—For other cases, see Real Actions, Cent. Dig. §§ 21–25; Dec. Dig. § 7.*]

7. EMINENT DOMAIN (§ 288*) — RIGHTS ACQUIRED—PRESCRIPTION.

A railroad company, acquiring title by expropriation proceedings, is protected by the prescription of two years.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 783–788; Dec. Dig. § 288.*]

8. EMINENT DOMAIN (§§ 69, 268, 317*)—APPROPRIATION—POSSESSION—EFFECT.

Where a railroad company went into possession by consent of the persons in possession and apparent owners, and without objection from a third person claiming ownership, and constructed and operated a commercial road, it

could not be disturbed in its possession, and as against the third persons having title it acquired only a servitude, for which it must make compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 171–179, 697, 736–740, 742, 834–840; Dec. Dig. §§ 69, 268, 317.*]

9. REAL ACTIONS (§ 8*)—PETITORY ACTIONS—RECOVERY—IMPROVEMENTS.

Where defendants, possessed of land in good faith, are evicted by plaintiff maintaining a petitory action, they are entitled to the value of their improvements in the proportion in which they are evicted.

[Ed. Note.—For other cases, see Real Actions, Cent. Dig. §§ 26–35; Dec. Dig. § 8.*]

10. APPEAL AND ERROR (§ 175*)—QUESTIONS REVIEWABLE — QUESTION NOT RAISED IN TRIAL COURT.

A question of fact, not tried in the lower court, cannot be considered in the Supreme Court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1137–1140; Dec. Dig. § 175.*]

11. TAXATION (§ 788*)—TAX SALES—DEEDS—RECITALS—CONCLUSIVENESS.

A recital in a tax deed that the tax collector mailed a notice to each of the tax debtors must, under the statute and Constitution, making tax sales prima facie valid, be taken as true until disproved.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1555, 1557, 1559–1569; Dec. Dig. § 788.*]

12. TAXATION (§ 764*)—TAX SALES—DESCRIPTION OF PROPERTY.

A description of property sold for taxes as "section 38, T. 1 N., R. 7 E.," "3/4 interest in section 39, T. 1 N., R. 7 E.," and "a half interest in section 40, T. 1 N., R. 7 E.," is sufficient to sustain a sale.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1519–1522; Dec. Dig. § 764.*]

13. TAXATION (§ 734*)—TAX SALES — VALIDITY.

Where the taxes for the payment of which a tax sale is made have been paid, no matter by whom, the tax sale is null.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1408, 1470–1473; Dec. Dig. § 734.*]

On Rehearing.

*(Syllabus by the Court.)*

14. APPEAL AND ERROR (§ 1118*)—REVERSAL.

On appeal, the judgment cannot be reversed or amended as between the appellees.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3296, 4414; Dec. Dig. § 1118.*]

15. APPEAL AND ERROR (§ 749*) — PROCEDURE —ANSWER—AMENDMENT OF JUDGMENT.

Where an answer to the appeal, praying for an amendment of the judgment was not filed *at least three days* before the day fixed for the argument of the cause, it will not be considered. C. P. art. 890; Act No. 103 of 1908.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3065–3073; Dec. Dig. § 749.*]

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; G. H. Couvillon, Judge.

Action by the Louisiana Land Company against Mrs. Florence Blakewood and others. From a judgment granting insufficient relief, plaintiff appeals. Reversed.

J. W. Joffrion, of Marksville, for appellant. Lafargue & Lafargue and W. H. Peterman, all of Marksville, for appellees.

PROVOSTY, J. This is a petitory action. Plaintiff claims title to all of section 38, three-fourths undivided of section 39, and ½ undivided of section 40, township 1 N., range 7 E., parish of Avoyelles. The three sections front on, and are bounded on the east by, Old river, once a part of the Mississippi river, and now the connecting link between the Red river and the Atchafalaya. The relative positions of the sections are that section 39 is between the other two, section 38 is north of it, and section 40 is south of it. The front part of the sections is cleared along the river for a distance of about three acres back; but, being outside of the levee system, and therefore subject to overflow, has not been continuously under cultivation. There are two cabins on section 39 and the same on 40. The defendants to the suit are the heirs of Pierre Charrier, H. M. Carruth, J. R. Nagle, the heirs of Blakewood, and the Louisiana Railway & Navigation Company, whose railroad traverses the three sections diagonally. The railroad called in warranty its vendors, namely, the heirs of Blakewood and H. M. Carruth.

Plaintiff's author in title acquired from the levee board in 1902, the levee board from the state in 1901, and the state at a tax sale, 1892, for taxes assessed to the original patentees from the United States—Jean Baptiste Verbois for section 38, Nicholas Verbois for section 39, and Francois Verbois for section 40.

The heirs of Pierre Charrier claim title to the N. ½ of section 40 and to one-fourth undivided of section 39; to the former through a sale to their father in 1854 by Zach. Kimball, Jr., who had bought in 1852 from the heirs of Jean Baptiste Verbois, and to the latter through a sale to their father in 1852 by the heirs of the patentee, Nicholas Verbois.

H. M. Carruth claims title to the front part of the N. ½ of the S. ½ of section 40, containing 40 acres, from having bought same in 1897 of J. R. Nagle, who (through successive sales) traces title to T. H. Carruth, who acquired from Chas. Chalfant, who acquired in 1878, and, through successive sales, traces title to the heirs of Jean Baptiste Verbois.

J. R. Nagle claims title to the back part of the N. ½ of the S. ½ of section 40, containing 80 acres, relying upon the same chain of titles upon which Carruth, his vendee, relies for the front part. Nagle claims title also to the S. ½ of the S. ½ of section 40. To the front part of this tract, containing 40 acres, he traces title (through successive sales) to heirs of Jean Baptiste Verbois. To the back part, containing some 80 acres, he can trace title no further back than 1893, when the same was included in the description by which the Water Valley plantation was adjudicated to his authors in title.

The heirs of Blakewood claim title by prescription to sections 38 and 39, and the N. ½ of section 40; and they claim title by deed to the one-fourth undivided of section 39 and one-half undivided of section 40—to the former through a tax sale to their father in 1868 under an assessment to Pierre Charrier, who had purchased from heirs of Nicholas Verbois, the patentee. The tax sale calls for two tracts of land: First, for the one-fourth undivided of section 39; and secondly for the undivided half of a second tract, described as being just below the mouth of Red river, fronting on Old river, bounded north by land of W. H. Bassett, and south by lands formerly belonging to Pierre Charrier and Verbois. This description fits exactly section 38, but not section 40; hence the said tax deed does not call for any part of section 40, and the heirs of Blakewood have no title to any part of section 40, unless by prescription.

By a strange mistake the heirs of Jean Baptiste Verbois, the patentee of section 38, undertook to sell section 40, and, vice versa, the heirs of Francois Verbois, the patentee of section 40, undertook to sell section 38; and the result is that the defendants can trace no title to these two sections. As to all three sections, however, they plead the prescriptions of 10 and 30 years acquirandi causa; and the railroad pleads the same prescription and also that of two years.

In stating the derivation of the titles relied upon by the defendants, we did not mention all the links, as these are so numerous that we thought the recital of them would be confusing. We will now supplement our said statement by the subjoined sketch, which gives them in full, and which will aid, also, in forming a mental picture of the location of the several tracts and the derivation of the titles to them. The descriptions in most of these titles are more or less unsatisfactory, in some even inaccurate; but to one who has familiarized himself with them all, and carries in his mind a clear conception of the ownership of each tract at the date of each of the sales, it becomes possible to locate each tract with certainty, as done in this sketch:

[1] The testimony on the question of possession is as follows:

John George testified that he was 67 years old, and had lived since 1868 2½ miles from the land in suit; that Pierre Charrier's wife and children lived on this land in 1868, and that Charrier left there in 1869 or 1867, and was succeeded by Dr. Blakewood, and that shortly after he heard of Dr. Blakewood having bought the land he saw employés

whom he supposed to be Dr. Blakewood's putting improvements on section 40; and that in 1868 the S. ½ of S. ½ of section 40 was owned by one James Kay, and that on this Kay land he had seen improvements going on all the time. He admitted that he did not know where the dividing line of the sections or the dividing line between the north and south halves of section 40 were, and that he did not remember how long after Dr. Blakewood had bought the property he saw him put the improvements on it, and, when further pressed, he said it was between 1883 and to-day.

W. R. Marshall testified that he was 52 years old, and had known the land in dispute all his life, having lived all his life about 6 miles from it, and during 1885 on the Water Valley plantation (this plantation was composed of the lower half of section 40 and of section 41, adjoining it on the south), and as a boy, 10 or 12 years old, he would haul freight from the landing kept by Pierre Charrier, who lived at this landing, about three acres north of the dividing line between the north half and the south half of section 40; that at that time the land below the landing was in the possession of Frozine Juneau; that he remembers when Dr. Blakewood bought the property (this was in 1868); that in 1885 Dr. Blakewood put cabins and fences on the place; that T. H. Carruth has had possession of Water Valley plantation for more than 30 years; that Pierre Charrier was succeeded by James Kay, and the latter by T. H. Carruth, in the possession of the land.

Remi Bordelon testified that he was 64 years old; that from 1870 up to the time of the construction of the railroad he had lived and kept store about 12 miles from the land in dispute, and had hauled freight from the Water Valley landing; that most of this time there were improvements going up in that neighborhood up and down the river, and

people lived in the houses, though the cultivation would be interrupted at times by overflows; that he never saw Dr. Blakewood, nor any of his sons, at work there—only tenants; that he always understood that the land to the left of the road as you go towards the river was the Blakewood land, and there would be crops on this land and tenants in the houses.

J. E. Griffin testified that he was 56 years old, and remembered the time when Dr. Blakewood bought the Charrier land, about 25 or 30 years ago; that Dr. Blakewood at that time built a couple of houses on the property; and that, ever since Dr. Blakewood bought this Charrier land, it and the Mrs. Frozine Juneau land adjoining it below (S. ½ of S. ½ of section 40) have always been fenced in and cultivated, except that sometimes overflows would destroy the fences, and then for a while the lands would remain uncultivated.

E. G. Blakewood testified that he was one of the defendants and 38 years old; that his father, Dr. Blakewood, now dead, had told him that, when he bought the Charrier land at a tax sale in 1868, there were houses and cleared land on it; that, as far as he can remember, his father cultivated the land through tenants; that this land and the improvements were on the N. ½ of section 40 and on section 39; that two of the houses are on the N. ½ of section 40 and two on section 39, and are worth $150 each; that the property he and his coheirs are now in possession of is sections 39 and 40; that, as far back as he can remember, the S. ½ of section 40 has always been in possession of T. H. Carruth.

T. H. Carruth testified that he was in his fifty-eighth year; that he had been cultivating the Water Valley plantation, including the N. ½ of the S. ½ of section 40, from the time Chalfant bought it in 1898, and that a few acres of the land were in cultiva-

tion before he went there; that H. M. Carruth owns the front part of the N. ½ of the S. ½ of section 40, and James R. Nagle the back or swamp part.

While this evidence is somewhat vague, it shows with certainty that the entire river front of the three sections has been continuously and uninterruptedly in the actual and peaceable possession of the present occupants of it and their authors in title for more than 40 years. The prescriptions of 10 and 30 years, pleaded, are therefore established, and the only question must be as to the extent of the area thereby acquired, and by whom.

[2] Dr. Blakewood and his heirs having possessed sections 38 and 39 under a title calling for a joint ownership, and their possession has been in accordance with this title: that is to say, not for themselves exclusively, but for themselves and their cotitularies. Chef Menteur Land Co., Ltd., v. Jos. A. Mercier, 129 La. 1042, 57 South. 329.

[3] The tax title of the plaintiff is made prima facie valid, both by statute and by the Constitution. It must, therefore, be recognized and given effect until some one appears who has a standing for contesting it, either because of title acquired from the former owner, or by prescription, or even because of rights resulting from mere possession. The Blakewood heirs have acquired title from the former owners only to a one-half interest in section 38 and a one-fourth interest in section 39; and their possession, in so far as it has been for themselves, and not their cotitularies (whoever these may have been), has not, as already stated, had any greater extent. They have a standing to contest the tax title of plaintiff, therefore, in so far as sections 38 and 39 are concerned, only to the extent of one-half as to 38 and one-fourth as to 39. Plaintiff now recognizes that the Blakewood heirs and the Charrier heirs are each owners of one-fourth, and T. H. Carruth of one-eighth, of 39. So

that as to 38 the title stands, incontestably, one-half to plaintiff and one-half to the Blakewood heirs; and as to 39, it stands three-eighths to plaintiff, and one-fourth to Blakewood heirs, one-fourth to Charrier heirs, and one-eighth to Carruth, undivided.

[4] As to the S. ½ of 40, the title of the defendants is good by the prescriptions of 10 and 30 years. They have had possession of part under title calling for the whole.

As to the N. ½ of section 40, Dr. Blakewood and heirs are shown to have had continuous, uninterrupted possession from the time of the tax sale to Dr. Blakewood in 1868, or shortly thereafter. This suit was filed in September, 1909, more than 40 years after this Blakewood possession had begun. Even if the 10 years during which the state and the levee board held the property should be deducted, as plaintiff contends should be done, there would still be more than 30 years. The prescriptive title of the Blakewood heirs to whatever portion of this N. ½ of section 40 they have been for this long time in actual possession of has therefore to be recognized and maintained. The record, however, furnishes no data by which the extent of that possession can be ascertained. The principle that possession of part is possession of whole does not apply to the case, because the possession by Dr. Blakewood and his heirs in this section 40 has been without title, and possessors without title do not acquire by prescription beyond the limits of their actual occupancy. For the purpose of fixing the limits of this actual occupancy, we think the interest of justice requires that this case be remanded.

[5, 6] The tax sale to the state, under which plaintiff claims, was only for an undivided half interest; that is to say, it was not to any specific part in severalty, but to a half interest in every part of the whole. In the N. ½ of section 40, it was only to a half interest undivided, and therefore plaintiff

can recover no greater interest than this in this the N. ½ of section 40. The fact that the half interest of the plaintiff, or of its authors in title, in the S. ½ of the section, has been cut off by prescription, does not operate to convert plaintiff's title to the N. ½ from one in indivision for one-half, to one in severalty for the whole. And, as the plaintiff company must recover on the strength of its title, and not on the weakness of that of its adversary, it cannot dispossess the Blakewood heirs from the other undivided half of this N. ½ of the section.

[7, 8] The defendant railroad acquired from the heirs of Blakewood and H. M. Carruth, and has no better title than its authors. It cannot, however, be dispossessed. As to a small interest, which it acquired by expropriation proceedings, it is protected by the prescription of two years. Amet v. T. & P. R. R. Co., 117 La. 454, 41 South. 721. As to the rest of its holdings, it went into possession by the consent of the Blakewood heirs and of H. M. Carruth, who were the parties in possession and apparent owners, and at any rate without objection from the plaintiff; and, such being the case, and its road being a commercial railroad in full operation, it cannot be disturbed in its possession. St. Julien v. Morgan R. R., 35 La. Ann. 924. As against the plaintiff, however, it acquired nothing more than a servitude. Moore Planting Co. v. Morgan's R. R. Co., 126 La. 840, 53 South. 22. Its right of way occupies about 10 acres on the N. ½ of section 40, and about 20 acres of section 39, and about 8 acres on section 38. The land it occupies on sections 38 and 39 is low swamp, not shown to have had any value for timber at the time it was taken. We value it at $5 per acre. The land on section 40 we value at $10 per acre. The land is unprotected from overflow at present, and may never have levee protection, and is therefore of little value. Since the advent of the boll weevil it has not been cultivated, and all the fences are down. For the servitude of section 38, then, plaintiff is entitled to $50; for section 39, to $37.50, or three-eighths of $100. For N. ½ of section 40, plaintiff will be entitled to $50, or one-half of $100, if its tax title is eventually held to prevail over the rights acquired by the Blakewood heirs by possession.

[9] The heirs of Blakewood have possessed in good faith and are entitled to the value of their improvements in the proportion in which they are being evicted by plaintiff. The only definite proof as to the clearing of the land by Dr. Blakewood or his heirs is the testimony of E. G. Blakewood that he cleared 3 acres, and that the cost was $10 per acre. Whether this clearing was on section 39 or on N. ½ of section 40, we are unable to ascertain from the record. Since the case is being remanded, we will leave this question also open. There are two houses on section 39 and two on N. ½ of 40, which, although old, are valued at $150 apiece. Having no other estimate to base ourselves on, we will adopt this $150. For the two houses on section 39, the heirs of Blakewood are entitled to three-eighths of $300. For the two houses on section 40 they will be entitled to one-half of $300, should plaintiff evict them.

The judgment appealed from, like the one we now proceed to render, is part in favor of the plaintiff and in part in favor of defendants; but it differs in some particulars from the present judgment, hence, for convenience in recasting, we set it aside.

Nothing was said in the answers of the several defendants, nor in the evidence, nor in the very full and carefully considered reasons for judgment of the learned judge a quo, touching the invalidity of the tax sale under which the plaintiff claims title, and not a word is said on that subject in the brief of counsel for the plaintiff; but in argument counsel for the defendants impugn said tax sale. The grounds are, first, that the taxes had been paid by the defendants

or their authors in title; second, that nothing shows that the "heirs of Jean Baptiste Verbois" and the "heirs of Nicholas Verbois," and the "heirs of Francois Verbois," to whom the three sections were respectively assessed, were served with notice of delinquency, or, in fact, that any such "heirs" were even in existence at the time of this sale; and, third, that the descriptions in the assessments were insufficient to identify the properties.

This additional defense wears much the appearance of an afterthought. However, we know of no good reason why this apparent tardiness in urging it should shut it out altogether.

[10, 11] The question of whether or not notice of delinquency was given to the tax debtors was one of fact, to be tried in the lower court, and which, not having been there tried, cannot be considered here. Moreover, the notice would appear to have been given; for the tax collector recites in his deed to the state that he mailed such a notice to each of the tax debtors, and such recitals of tax collectors' deeds are required by statute to be taken for true until disproved, and are also prima facie true as an effect of the constitutional provision making tax sales prima facie valid. Non constat that the individuals designated in the several assessments as "heirs of Jean Baptiste Verbois" and "heirs of Nicholas Verbois" and heirs of Francois Verbois" were not known to the tax collector and duly notified. If the recital of the tax deed had been that the notice had been given by publication, the situation would have been entirely different. A case similar to those of New Orleans v. Schmidt, 10 La. Ann. 771, New Orleans v. De St. Romes, 28 La. Ann. 17, and Irwin v. New Orleans, 28 La. Ann. 670, would then have been presented.

[12] The descriptions of the properties were not only sufficient, but even accurate. As to section 38 it was: "Section 38, T. 1 N.,

R. 7 E." As to section 39, it was: "A ¾ interest in section 39, T. 1 N., R. 7 E." And as to section 40 it was: "A ½ interest in section 40, T. 1 N., R. 7 E."

[13] Regarding the payment of taxes: Of course, if the taxes for the nonpayment of which the tax sale was made had been paid, no matter by whom, the tax sale was null. And the record does show that in 1891 the Blakewood heirs paid taxes on 1,500 acres of land situated on Old river; but nothing shows that this 1,500 acres was the land in dispute. Since, however, the case has had to be remanded on another point, we have concluded to leave this point, also, open for further evidence.

This we do although the point appears to be, in reality, of little or no interest, since the heirs of Blakewood have no standing to attack the tax sale, except as to the undivided half of that part of the N. ½ of section 40 of which they may, on further trial, show themselves to be in the actual occupancy of, and since they appear, as to such part, to have by the prescription of 30 years a title superior to the tax sale. We have concluded it might be best to leave the point open, as such a thing might be as their being able to prove occupancy for one year or more of a greater extent than they can show possession of for 30 years, and in that event they could retain such excess only by attacking the tax sale, and their mere right of possession, resulting from their possession as owner, of a year or more, would afford them a standing for doing so.

It is therefore ordered, adjudged, and decreed that, as against the heirs of Blakewood, namely, Florence Blakewood, wife of J. Alexander Gray, Eldred G. Blakewood, J. Alexander Gray, Eveline Blakewood, wife of A. A. Whitlock, Jr., Edward B. Blakewood, and Mary Elenor Blakewood, and against the heirs of Charles Charrier, namely, Cleophas E. Charrier, and Eugene Wheat,

and against James R. Nagle and H. M. Curruth and the Louisiana Railway & Navigation Company, the plaintiff, the Louisiana Land Company, have judgment recognizing it as owner of, and entitled to the possession of, the undivided half of section 38, and three-eighths undivided of section 39, in township 1 N., range 7 E., parish of Avoyelles, subject, however, to a servitude in favor of the said railway company over and upon a strip of land 200 feet in width running diagonally across said lands, said strip being at present occupied by the roadbed of said railroad company, by virtue of which servitude the said railroad is entitled to the continued possession and use for railroad purposes of said strip of land.

And it is further ordered, adjudged, and decreed that for the value of said servitude the plaintiff have judgment against the said railroad company in the sum of $87.50, with legal interest from judicial demand, and that for a like sum the said railroad company have judgment against its warrantors, the above-named heirs of Blakewood jointly.

And it is further ordered, adjudged, and decreed that the hereinabove named heirs of Blakewood have judgment against the plaintiff in the sum of $112.50, with legal interest from the date of this judgment.

It is further ordered, adjudged, and decreed that this case be remanded for further trial in accordance with the views hereinbefore expressed.

It is further ordered, adjudged, and decreed that, except as expressly sustained or remanded for further trial by the present judgment, the demand of plaintiff be rejected, and plaintiff's suit be dismissed.

It is further ordered, adjudged, and decreed that the costs of appeal and three-fourths of the costs of the lower court up to date be paid, one-third by the above-named heirs of Blakewood in solido, one-third by the heirs of Charrier in solido, one-third by

the Louisiana Railway & Navigation Company, and that the remaining costs of the lower court up to date be paid by the plaintiff, and that all future costs abide the result of the future trial.

### On Rehearing.

LAND, J. [15] In plaintiff's application for a rehearing our attention was called to the fact that the answer of the Blakewood heirs to the appeal was not filed "at least *three days before that fixed for the argument*" as required by Act No. 103 of 1908, p. 161. Gartner v. Richardson, 123 La. 195, 48 South. 886; Union Sawmill Co. v. Arkansas Southeastern R. Co., 123 La. 555, 49 South. 173.

We have referred to the dates, and find that said answer was filed on the *third* day, or two days before that fixed for the argument. Hence the Blakewood heirs cannot demand the reversal or amendment of any part of the judgment. See, also, article 890, Code of Practice 1870.

As to section 40, the demand of the plaintiff was rejected, and this tract was decreed to belong to Eugene Wheat, Mark Charrier, and Cleophas Charrier.

[14] The judgment cannot be amended, as between them and their coappellees, the Blakewood heirs.

The appellate court cannot amend the judgment below as between or among the appellees. Coleman v. Cousin, 128 La. 1094, 55 South. 686.

Wheat and the Charriers had no legal title to the N. ½ of section 40, and the evidence is clear that their authors abandoned the premises in 1869 or 1870.

Our conclusion is that our former decree was correct as to the titles to sections 38 and 39. As to the N. ½ of section 40, we conclude that, as the case is presented on appeal, the plaintiff should have judgment for an undivided half interest therein. As the judgment below cannot be amended in fa-

vor of the Blakewood heirs, the allowance to them for improvements and betterments on section '39 cannot be increased. As to the N. ½ of section 40, the question of improvements is still open. There were five old cabins on both tracts, worth $75 each, according to the estimates of the judge below. As there is doubt as to the location of these cabins, a fair adjustment would be to charge plaintiff with one-half and three-eighths of one-half, of the total valuation of $375, making $164.50 due by plaintiff to the Blakewood heirs.

In our former decree we estimated the value of plaintiffs' proportion of the right of way of the defendant railroad company at $150.

The conclusion we have reached renders it unnecessary to remand the case to enable the Blakewood heirs to prove how much of the N. ½ of section 40 was possessed by them and their authors.

The tax receipt filed by the Blakewood heirs is too vague to identify the lands on which the taxes of 1892 were paid by their father, and as they had abundant opportunity on the trial below to connect the tax receipt with the particular tracts of land now in controversy, we conclude that the case should not be remanded for that purpose, especially as the tax sale to the state was not assailed in the pleadings on the ground of the payment of the taxes for which the land was sold, and the point was not raised in the court below, or in this court, except in argument at the bar.

For the purpose of recasting the decree, it is ordered that the judgment below and our former decree herein be set aside, and it is now ordered, adjudged, and decreed that as to the titles of the respective parties to sections 38 and 39 the judgment below be affirmed.

It is further ordered, adjudged, and decreed that the plaintiff, the Louisiana Land Company, be recognized as the owner of an undivided one-half of the N. ½ of section 40, in township 1 N., range 7 E.

It is further ordered that the Blakewood heirs, named in the judgment below, do have and recover of the plaintiff, the Louisiana Land Company, the sum of $164.50 for value of improvements.

It is further ordered, adjudged, and decreed that the plaintiff, the Louisiana Land Company, do have and recover of the Louisiana Railway & Navigation Company the sum of $150 in full compensation of plaintiff's right, title, and interest in and to the right of way of said railroad company traversing said sections 38, 39 and the N. ½ of section 40.

It is further ordered, adjudged, and decreed that the judgment below as to the S. ½ of said section 40 be affirmed.

It is further ordered that the rights of the defendant railroad company against the warrantors named in its answer be and the same are hereby reserved.

It is further ordered, adjudged, and decreed that, except as expressly sustained by the present decree, the demands of the plaintiff be rejected, and the suit be dismissd.

It is further ordered that the costs of suit and of this appeal be paid as follows: One-fourth by the plaintiff, one-fourth by the heirs of Blakewood in solido, one-fourth by the heirs of Charrier in solido, and one-fourth by the Louisiana Railway & Navigation Company.