19 So.2d 616

PLACID OIL CO. v. NORTH CENTRAL . TEXAS OIL CO., Inc., et al.

No. 37215.

June 26, 1944.

Rehearing Denied Oct. 11, 1944.

Cook, Lee, Clark & Egan, of Shreveport, for defendant and appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for plaintiff and appellee.

Herold, Cousin & Herold, of Shreveport, for J. R. Parten, defendant and appellee.

O'NIELL, Chief Justice.

This is an interpleader proceeding to distribute among the royalty owners the proceeds of certain oil and gas produced from a well drilled to what is called the Bodcaw sand in the center of a 40-acre tract in the Cotton Valley Oil Field, in Webster Parish. The land is the SW¼ of SW¼ of Section 13 in T. 21 N., R. 10 W. The Placid Oil Company, having bought the oil and gas from the producer, the Hunt Oil Company, deposited in court the sum of $3,781.82, representing the 5/64 royalty interest in the oil and gas produced from the well. The plaintiff cited the several owners of parts of the 1/8 royalty interest in that 40-acre tract and the several owners of parts of the 1/8 royalty interests in the adjacent 40-acre tract, on the west side, being the SE¼ of SE¼ of Section 14, in the same township.

The contest now is between J. R. Parten, and the North Central Texas Oil Company. Parten owns 3/4 of the 1/8, or 3/32, royalty interest in the 40-acre tract on which the well was drilled, and owns 1/8 of 1/8, or 1/64, royalty interest in the adjoining 40-acre tract, being the SE¼ of SE¼ of Section 14 in the same township. The North Central Texas Oil Company owns 1/2 of 1/8, or 1/16, royalty interest in the SE¼

of SE¼ of Section 14, but has no interest in the 40-acre tract on which the well was drilled. The remaining 1/4 interest in the 1/8 royalty in the SW¼ of SW¼ of Section 13, on which the well was drilled—that is the 1/4 interest not owned by Parten—is owned by five individuals who own also the same royalty interest in the SE¼ of SE¼ of Section 14. These five individuals have no interest in this suit because they are entitled to their 1/4 of the 1/8, or 1/32, royalty interest, whether the distribution be made among the holders of the mineral interests only in the 40-acre tract on which the well was drilled, or be made among the holders of the mineral interests in both 40-acre tracts. The remaining 1/8 of the 1/8, or 1/64, royalty interest in the SE¼ of SE¼ of Section 14 is owned by seven individuals (being 5 O'Briens and Koonce and Turner) who have entered into an agreement to abide by whatever judgment may be rendered in the contest between J. R. Parten and the North Central Texas Oil Company; that is to say, these seven individuals—the 5 O'Briens and Koonce and Turner—are to receive 1/2 of their 1/8 of the 1/8 royalty interest, or 1/128 of the proceeds of the oil and gas produced from the SW¼ of SW¼ of Section 13, if the North Central Texas Oil Company wins the suit, and are to receive none of the proceeds of the oil or gas if J. R. Parten wins the suit. The contest between Parten and the North Central Texas Oil Company involves the 5/128 royalty interest in the proceeds of the oil and gas produced from the well on the SW¼ of SW¼ of Section 13; for it is conceded that Parten is entitled to 1/2 of his 3/4 of the 1/8 royalty in-

terest in the 40-acre tract on which the well was drilled, and an additional 1/128 royalty interest in the oil and gas produced from that well, because of his owning 1/8 of 1/8, or 1/64, royalty interest in the adjoining SE¼ of SE¼ of Section 14. Of the $3,-781.82 representing the 5/64 royalty interest in the oil and gas produced from the well, one-half, or $1,890.91, is conceded to belong to J. R. Parten. The contest is over the remaining $1,890.91; and the question is whether all of it shall be paid to Parten, or whether $1,512.73, being 2/5 of the sum deposited, shall be paid to the North Central Texas Oil Company, and the remaining $378.18, being 1/10 of the sum deposited, shall be paid to the 5 O'Briens and Koonce and Turner.

The judge of the district court decided that J. R. Parten was entitled to all of the deposit of $3,781.82; and the North Central Texas Oil Company is appealing from the decision. The 5 O'Briens and Koonce and Turner, by virtue of the agreement which we have mentioned, are depending upon the appeal of the North Central Texas Oil Company.

■ J. R. Parten has filed an answer to to the appeal taken by the North Central Texas Oil Company and prays for an amendment of the judgment so as to condemn the Placid Oil Company to pay him legal interest on the amount deposited in court from a date to begin one month after the date when the Placid Oil Company received the oil from the Hunt Oil Company. Inasmuch as the only party who appealed from the judgment of the district court is the North Central Texas Oil Company,

and inasmuch as the Placid Oil Company and J. R. Parten are therefore both appellees, we cannot amend the judgment to the prejudice of one of the appellees, the Placid Oil Company, and to the corresponding advantage of the other appellee, J. R. Parten. Parten's only remedy for such an amendment of the judgment was to appeal from it. Converse v. The Lucy Robinson, 15 La.Ann. 433, loc. cit. page 434; Howard v. Waggamann, 28 La.Ann. 99, loc. cit. page 100; Bowman v. Kaufman, Sheriff, et al., 30 La.Ann. 1021, loc. cit. page 1026; Coleman v. Cousin, 128 La. 1094, 55 So. 686; Smith v. American Bridge Company, 130 La. 207, 57 So. 891; Louisiana Land Company v. Blakewood, 131 La. 539, 59 So. 984, on rehearing 131 La. loc. cit. page 556, 59 So. loc. cit. page 990; Matthews v. Olla State Bank, 164 La. 463, 114 So. 98.

The contest arose in this way: Many years ago, soon after the discovery of oil in Webster Parish, in what is now the Cotton Valley Field, a man named John Babb, being the owner of 240 acres of land, embracing the 80 acres described as SW¼ of SW¼ of Section 13 and SE¼ of SE¼ of Section 14, in T. 21 N., R. 10 W., in Webster Parish, made a lease of the 240 acres of land to Dr. Robert D. Webb for the production of oil and gas. Babb reserved the 1/8 royalty interest in any and all oil or gas that might be produced under the lease. Thereafter Babb sold to several parties, from time to time, various fractional parts of his 1/8 royalty interest in the several 40-acre tracts composing the 240 acres.

In 1937 the Commissioner of Conservation, acting under authority of Act No. 225

of 1936, issued an order, called Order No. 10, effective July 24, 1937, establishing and promulgating rules and regulations for the conservation of oil and gas, or either of them, in what is known as the Bodcaw sand or at the depth of 8,000 feet or more. In a paragraph called Section V–B of the order, was established a drilling unit of 80 acres, to be composed of any two adjacent 40-acre subdivisions, for the production of oil or gas from the Bodcaw sand, or from the depth of 8,000 feet or more. It was provided in that section of the order that all applications for permits to drill upon any designated 80-acre unit should be accompanied by a map showing the acreage selected and the proposed location of the well. It was provided also in this seciton of the order that no well should be drilled except in the center of either of the two 40-acre subdivisions composing the 80-acre drilling unit; and that every application for a permit should designate the proposed location of the well. In compliance with the provisions of Section V–B of Order No. 10, the Hunt Oil Company, having an oil and gas lease on the 80-acre tract comprising the SW¼ of SW¼ of Section 13 and the SE¼ of SE¼ of Section 14, in T. 21 N., R. 10 W., made application to the Commissioner of Conservation for permission to drill a well to the Bodcaw sand, or to the depth of 8,000 feet or more, in the center of the SW¼ of SW¼ of Section 13, and for that purpose to combine the two 40-acre tracts into an 80-acre drilling unit. The application was accompanied by a map describing the proposed drilling unit as composed of the SW¼ of SW¼ of Section 13 and the SE¼ of SE¼ of Section 14, and

showing the location of the proposed well in the center of the SW¼ of the SW¼ of Section 13. The Commissioner of Conservation granted the permit, and the Hunt Oil Company drilled the well in the center of the SW¼ of SW¼ of Section 13 to the Bodcaw sand. The well was completed as a commercial producer. The Placid Oil Company, which is a pipe line company, the controlling interest and management of which are said to be identical with the controlling interest and management of the Hunt Oil Company, purchased the production from the well. Some time after the completion of the well all of the owners of mineral interests in the several 40-acre tracts in the Cotton Valley Field entered into a unitization agreement, unitizing or combining the several 40-acre tracts, respectively, into 80-acre drilling units. The agreement became effective on June 29, 1940. The money in contest in this case represents the proceeds of oil and gas produced before that date.

The reason why J. R. Parten contends that the North Central Texas Oil Company, having mineral interests only in the SE¼ of SE¼ of Section 14, is not entitled to share in the production from the well drilled on the SW¼ of SW¼ of Section 13 is that at the time when the well was drilled there was no agreement on the part of the owners of the mineral interests in the two 40-acre tracts, respectively, to unitize or combine the two tracts into an 80-acre drilling unit. And Parten contends that there was no order issued by the Commissioner of Conservation unitizing the two 40-acre tracts.

It is true that the owners of the royalty interests in the two 40-acre tracts did not consent to the unitizing or combining of the two tracts into an 80-acre drilling unit. They were not informed of the application of the Hunt Oil Company for a permit from the Commissioner of Conservation to combine the two 40-acre tracts; there was no hearing had before the Commissioner with a view of compelling the pooling or unitizing of the two 40-acre tracts into a drilling unit. It is for this reason that Parten disputes the right of the North Central Texas Oil Company to share in the production of the oil and gas produced from the well on the SW¼ of SW¼ of Section 13.

Notwithstanding there was no consent on the part of the owners of the royalty interests in the two 40-acre tracts, respectively, to pool or combine them into an 80-acre drilling unit,—and notwithstanding there was no hearing had nor notice given to the several owners of the royalty interests in the two tracts,—nevertheless there was a permit given to the Hunt Oil Company by the Commissioner of Conservation to combine the two 40-acre tracts into a drilling unit and to drill a well to the Bodcaw sand in the center of the eastern half of the 80-acre drilling unit. The effect of the permit was to permit the several owners of the 1/8 royalty interest in the western half of the 80-acre drilling unit to share equally with the owners of the 1/8 royalty interest in the eastern half of the 80-acre drilling unit,—in the center of which eastern half of the drilling unit the well was drilled.

When the permit for the drilling of the well was granted by the Commissioner

of Conservation, his Order No. 10 was in effect. The order was issued after public hearings were held by the Commissioner in New Orleans and in Shreveport, which hearings were preceded by publication of the proper notice in the State's official journal, in Baton Rouge, and in newspapers published in Webster Parish, in which the Cotton Valley Field is located. In fact the order was preceded and attended by all of the requirements of Act 225 of 1936, authorizing such an order. The order therefore became the law governing the drilling for oil or gas to the depth of 8,000 feet or more, or to what is called the Bodcaw sand, in the Cotton Valley Field. The order had its effect upon every owner of a mineral interest in any tract of land having an area less than 80 acres, in the Cotton Valley Field, so far as oil or gas in the Bodcaw sand or formation was concerned. The effect of the order was to substitute for the right of every owner of a mineral interest in a tract of land having an area less than 80 acres—to receive all of his proportionate share of any oil or gas that might be produced from the Bodcaw sand through a well drilled upon the land in which he owned the mineral interest—the right to receive only his proportionate share of any oil or gas produced from the Bodcaw sand through a well drilled upon an 80-acre drilling unit embracing the land in which he had his mineral interest. Thus, the right of J. R. Parten to receive 3/4 of the 1/8, or 3/32, royalty in any oil or gas that might have been produced from the SW¼ of SW¼ of Section 13 was converted into the right to receive 3/8 of the 1/8, or 3/64, royalty in

any oil or gas that might be produced from either that 40-acre tract or from any adjoining 40-acre tract that might be added to it to compose an 80-acre drilling unit. And the right of the North Central Texas Oil Company to receive 1/2 of the 1/8, or 1/16, royalty interest in any oil or gas that might have been produced from the SE¼ of SE¼ of Section 14 was, by virtue of Order No. 10, converted into the right to receive 1/2 of the 1/16, or 1/32, royalty from any oil or gas that might be produced either from that 40-acre tract or from any adjoining 40-acre tract that might be added to it to compose an 80-acre drilling unit.

■ Notwithstanding the several owners of the 1/8 royalty interest in the 40-acre tract in the southwest corner of Section 13 and the several owners of the 1/8 royalty interest in the 40-acre tract in the southeast corner of Section 14, respectively, did not consent to unitizing or combining the two 40-acre tracts into an 80-acre drilling unit, and notwithstanding the Commissioner of Conservation did not allow them a hearing on the proposed unitization, the permit issued by the Commissioner to the Hunt Oil Company to combine the two 40-acre tracts into a drilling unit and to drill a well in the center of the eastern half of the 80-acre drilling unit, to the Bodcaw sand, was in fact a unitization of the two 40-acre tracts, so as to allow the owners of the mineral interests in the western half of the 80-acre drilling unit the right to share equally with the owners of the mineral interests in the eastern half of the 80-acre drilling unit—in the center of which eastern half of the 80-acre drilling unit the well

was drilled. To hold otherwise would deprive the owners of the mineral interests in the SE¼ of SE¼ of Section 14 of all of their mineral interests, because Order No. 10 of the Commissioner of Conservation, effective July 24, 1937, forbade the drilling of a well on the SE¼ of SE¼ of Section 14 to the Bodcaw sand after that 40-acre tract was unitized or combined with the adjoining 40-acre tract on which a well was drilled to the Bodcaw sand. But the right of a royalty owner who was not notified of the intention to unitize or combine the two tracts, to show afterwards that the so-called unitization order was prejudicial to his interest, is not foreclosed by the so-called unitization order.

■ J. R. Parten in his answer to this suit pleaded that in a certain suit entitled J. R. Parten v. North Central Texas Oil Company et al., No. 10,621 of the docket of the 26th Judicial District Court, for the Parish of Webster, the question at issue was whether the original lease, dated November 26, 1921, was a joint lease, entitling the owners of the royalty interests to share in the oil or gas produced from a well drilled on any subdivision of the 240 acres, and that it was decided in that case that the lease was not a joint lease and hence that the owners of the royalty interests were entitled to share only in the oil or gas produced from the particular tract or subdivision in which each of them owned his royalty interest, respectively. Parten contends that the issue which was decided in that case is the same issue that is presented in this case, and is res judicata. The plea is not well founded because the issue in the

present case, concerning the effect of Order No. 10, taken in connection with the permit granted by the Commissioner of Conservation to the Hunt Oil Company to combine the two 40-acre tracts and to drill a well on one of them to the Bodcaw sand, was not an issue in the case entitled J. R. Parten v. North Central Texas Oil Company et al., No. 10,621 of the docket of the 26th Judicial District Court, for the Parish of Webster.

It is admitted in the brief filed for J. R. Parten that he has been paid 1/64 of the proceeds of the oil and gas produced by the Hunt Oil Company from the well on the SW¼ of SW¼ of Section 13. The reason for that payment was that Parten owned 1/64 royalty interest in the SE¼ of SE¼ of Section 14, and owned 3/32 royalty interest in the SW¼ of SW¼ of Section 13, and hence was entitled to his 1/64 royalty interest on either of the proposed bases of distribution. That left Parten owning 5/64 royalty interest in the SW¼ of SW¼ of Section 13, which is equivalent to 5/128 royalty interest in the whole 80 acres. The remaining 5/128 royalty interest, out of the 5/64 deposited in court, is the part that is in dispute in this case. The question is whether all of this 5/128 should go also to Parten or whether the North Central Texas Oil Company should receive 4/128 and the seven individuals referred to as the five O'Briens and Koonce and Turner should receive the remaining 1/128. The 5 O'Briens and Koonce and Turner own their 1/128 royalty interest in the 80-acre tract, which was originally 1/64 royalty interest in the western 40-acre tract, in these propor-

tions: P. F. O'Brien, R. J. O'Brien, and J. C. O'Brien own each 1/40 of the 1/8 royalty interest in the 40 acres; W. J. O'Brien and H. A. O'Brien own each 1/64 of the 1/8 royalty interest in the 40 acres; J.W. Koonce owns 1/160 of the 1/8 royalty interest in the 40 acres; and A. D. Turner owns 1/80 of the 1/8 royalty interest in the 40 acres.

For the reasons stated our decision is that Parten is entitled to only 5/128 royalty interest in the 80-acre unit, that the North Central Texas Oil Company is entitled to 4/128, and that the seven individuals referred to as the O'Briens, Koonce and Turner are entitled to the remaining 1/128 royalty interest in the 80-acre unit. Accordingly, were it not for the deduction to be made for court costs, the $3,781.82 should be distributed by giving to J. R. Parten $1,-890.91, to the North Central Texas Oil Company $1,512.73, and to the seven individuals referred to as the five O'Briens, Koonce and Turner the remaining $378.18, as follows: To P. F. O'Brien $75.64, to R. J. O'Brien $75.64, to J. C. O'Brien $75.64, to W. J. O'Brien $47.27, to H. A. O'Brien $47.27, to J. W. Koonce $18.90, and to A. D. Turner $37.82.

The judgment appealed from is annulled, and it is now ordered, adjudged and decreed that, after all court costs are paid out of the $3,781.82 deposited in court, the remainder shall be distributed by giving 1/2 thereof to J. R. Parten, 2/5 thereof to the North Central Texas Oil Company, and 1/10 thereof to the seven individuals referred to as the five O'Briens and Koonce and Turner, in the following proportions:

1/5 of the 1/10 to P. F. O'Brien, 1/5 of the 1/10 to R. J. O'Brien, 1/5 of the 1/10 to J. C. O'Brien, 1/8 of the 1/10 to W. J. O'Brien, 1/8 of the 1/10 to H. A. O'Brien, 1/20 of the 1/10 to J. W. Koonce, and 1/10 of the 1/10 to A. D. Turner.

PONDER, J., takes no part.

### On Application for Rehearing

PER CURIAM.

J. R. Parten in his petition for a rehearing contends that the drilling permit under which the Hunt Oil Company drilled the well on the SW¼ of SW¼ of Section 13 was not a valid order for the unitization of that tract with the SE¼ of SE¼ of Section 14, so far as Parten was concerned, because he was not given notice or an opportunity to be heard before the permit was granted.

We agree with counsel for Parten that the Order No. 10 of the Commissioner of Conservation, by which he adopted a drilling unit of 80 acres for the Bodcaw sand, in the Cotton Valley Field, and which became effective on July 24, 1937, did not mean that the Commissioner thereafter might grant unitization orders without giving to all parties having mineral rights in any part of the area to be unitized due notice and an opportunity to be heard. Such notice is due particularly to parties having a mineral interest in only a part of the area intended to be unitized, or having a greater mineral interest in one part than in another part of the area intended to be unitized. Whether such notice is due to parties having the same mineral interest in one as in the other or the others of the two or more tracts intended to be unitized is a matter which we are not obliged to decide in this case, because, as we stated in our original opinion in this case, the parties having such uniform mineral interests in this instance are not complaining. In fact J. R. Parten is the only one who is complaining of the failure of the Conservation Commissioner to give notice to the parties owning the royalty interests in the SW¼ of SW¼ of Section 13, of the application of the Hunt Oil Company for a permit to drill a Bodcaw well on that 40-acre tract and to consolidate with it the SE¼ of SE¼ of Section 14 for the purpose of making up the necessary 80-acre drilling unit. Parten's complaint is founded of course upon his having a greater mineral interest in the 40-acre tract on which the well is located than he has in the other of the two 40-acre tracts composing the necessary 80-acre drilling unit, or production unit. He owns three-fourths of the one-eighth royalty interest in the 40-acre tract on which the well is located, and owns only one-eighth of the one-eighth royalty interest in the other of the two 40-acre tracts which compose the necessary 80-acre drilling unit. The reason why the owners of the other fourth interest in the one-eighth royalty interest in the 40-acre tract on which the well is located are not complaining is that each of them has the same interest in one as in the other of the two 40-acre tracts composing the necessary 80-acre drilling unit, and therefore each of them is entitled to the same share of the production from the well on the SW¼ of SW¼ of Section 13 as if that 40-acre tract—on which the well

is located—had not been unitized with any additional area.

But the fact that the owners of the one-eighth royalty interest in the 40-acre tract on which the lessee, Hunt Oil Company, intended to drill and did drill the well were not notified of the intention to unitize that tract with the adjoining 40-acre tract, in Section 14, does not entitle the owners of the one-eighth royalty interest in the 40-acre tract on which the well is located to take all of the one-eighth of the production of oil and gas, and thus to deprive the parties owning the one-eighth royalty interest in the other one of the two 40-acre tracts composing the necessary 80-acre drilling unit of their half of the one-eighth royalty interest in the production from the 80-acre drilling unit.

We must bear in mind that, under the provisions of Order No. 10, which is conceded to be a valid regulation of the production of oil and gas from the Bodcaw sand, in the Cotton Valley Field, this well, which is located on the 40-acre tract in which Parten owned three-fourths of the one-eighth royalty interest, could not have been drilled on that tract without its being unitized with one of the four adjoining 40-acre subdivisions. And it is not contended on behalf of Parten that he would have shared better if this 40-acre tract on which the well is located had been unitized with one of the three other adjoining 40-acre tracts, instead of the SE¼ of SE¼ of Section 14. On the contrary, as Parten owned one-eighth of the one-eighth royalty interest in the SE¼ of SE¼ of Section 14, and as there is no claim that

he had any mineral interest in any other of the four adjoining 40-acre subdivisions, the presumption is that it was advantageous to him to have the SW¼ of SW¼ of Section 13 unitized with the SE¼ of SE¼ of Section 14, rather than to have it unitized with any of the three other adjoining 40-acre subdivisions.

Aside from Parten's failure in this suit to show or aver that he suffered a disadvantage by the unitization of the SW¼ of SW¼ of Section 13 with the SE¼ of SE¼ of Section 14, he does not show or claim that he might have opposed successfully—or that he would have opposed—the application of the Hunt Oil Company for a permit to drill the well on the SW¼ of SW¼ of Section 13 and for that purpose to combine that 40-acre tract with the SE¼ of SE¼ of Section 14 in order to make up the necessary 80-acre drilling unit. The presumption is that Parten would not have opposed the application—not only because an opposition to it would have been against his interest but also because it would have been without avail.

If it had been possible legally—in the face of the Conservation Commissioner's Order No. 10—for the Hunt Oil Company to drill a well on the SW¼ of SW¼ of Section 13, to the Bodcaw sand, without unitizing that 40-acre tract with one of the 4 adjoining 40-acre subdivisions, the so-called "allowable" of production from the 40-acre tract on which the well was drilled would have been exactly half as much as from a well drilled on an 80-acre drilling unit. I am referring now to the provision in Subsection (6) of Section 6 of Act No.

225 of 1936, making provision for the drilling of a well on an area less than 80 acres where the area is of such shape or so situated as to make it impossible to attach it to an adjoining tract of sufficient area to make up an 80-acre drilling unit. The SW¼ of SW¼ of Section 13 was not so situated as to exempt it from the requirement to be unitized with an adjoining 40-acre subdivision.

In Parten's brief in support of his petition for a rehearing attention is directed to the fact that there are two producing wells on the SE¼ of SE¼ of Section 14, one in the Glen Rose formation and the other in the Travis Peak formation, and that the production from these wells has been shared exclusively by the owners of the mineral rights in that 40-acre subdivision. But it is admitted that the drilling unit, or production unit, that was established by the Conservation Department for the Glen Rose formation and for the Travis Peak formation is 40 acres, and not 80 acres, as in the case of the Bodcaw formation—which is a deeper formation. It is conceded also that to require an 80-acre drilling unit for the Bodcaw formation, with only a 40-acre unit for the Glen Rose formation and for the Travis Peak formation, is within the police power of the State and within the authority of the Department of Conservation. Hence the fact that the owners of the mineral rights in only the SW¼ of SW¼ of Section 13 have not claimed any share in the production from the Glen Rose well or from the Travis Peak well, on the SE¼ of SE¼ of Section 14, has no bearing whatever upon the right of the owners of

the mineral interests in only the SE¼ of SE¼ of Section 14 to receive one-half of the production from the Bodcaw well, on the other of the two 40-acre tracts which compose the required 80-acre drilling unit.

As far as the record in this case shows, the failure of the Hunt Oil Company and of the Conservation Commissioner to notify the royalty owners that the company had applied for a permit to drill a well to the Bodcaw sand on the SW¼ of SW¼ of Section 13—and for that purpose to unitize that subdivision with the SE¼ of SE¼ of Section 14—was not only harmless but apparently unintentional. The Hunt Oil Company, as lessee, owned the seven-eighths working interest in the oil and gas in the whole 80-acre tract, and, obviously, assumed that the owner or owners of the one-eighth royalty had the same interest in one as in the other of the two 40-acre tracts composing the drilling unit. But it serves no purpose now to discuss the question as an abstract proposition—whether these royalty owners should have been given due notice and an opportunity to be heard before the Conservation Commissioner acted upon the application of the Hunt Oil Company. We must consider and decide the case as we find it. The granting of the drilling permit, coupled with the unitization order—the drilling of the well and the production and sale of the oil and gas—constitute *un fait accompli*. All the king's horses and all the king's men could not reinstate the status quo ante again. As Grover Cleveland declared in one of his famous messages, "It is a condition which confronts us—not a theory." Our conclusion

is that the decision which we have given in this case is the only just one that could be given.

The petition for a rehearing is denied.

FOURNET, J., dissents, being of the opinion that a rehearing should be granted.

PONDER, J., takes no part.