## No. 9346.

### TOWNSEND LAWRENCE VS. MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY.

The owner of lands, who allows a railroad company to occupy and use the same for the construction of its road and other appurtenances necessary to the operation of a railroad, without remonstrance or complaint, will be held to have acquiesced therein and such a waiver will bar his action to dispossess the company.

But such a waiver will not defeat his right of action for damages or for the value of the lands thus taken by him. Affirming St. Julien vs. Railroad, 35 Ann. 924.

The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its roads and works would be of little value, such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the beds of its road, or water for its engines, and the like. Morgan vs. Louisiana, 93 U. S. 217.

Such franchise includes the right of appropriating lands for the construction of necessary appurtenances, without which the road could not be successfully operated.

Such a franchise is transferred in a marshal's sale of a railroad and all its franchises to the purchaser, even if he is a natural person.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot, J.*

*B. R. Forman* and *Edward Simon* for Plaintiff and Appellant.

*Leovy & Leovy, J. T. Blair* and *Farrar & Kruttschnitt* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiff appeals from a judgment rejecting his demand in a petitory action for the recovery of several tracts and strips of land, situated in Morgan City, in the possession of the defendant company, and on which it has erected depots for freight and passengers, several railroad tracks, switches, workshops, coal yards, cattle pens and steamboat landings and wharves, all used for the purposes of a common carrier, both by land and water.

Both parties claim title under Robert B. and Thomas T. Brashear, who once owned the plantation from which Morgan City was carved out, and which included the lands now in controversy.   In addition to the plea of ownership through an alleged claim of title, the defendant company urges numerous other grounds of defense, among which is the averment that the present claimant and his alleged authors witnessed the possession of defendant of the several tracts of land in suit, were cognizant of the structures which the company placed thereon, from the year 1859 to the date of the suit, as the needs of the business required; that none of them ever objected to the company's possession and use of the lands aforesaid for the purposes of the company's business as a common carrier, and that such acquiescence is a bar to plaintiff's action to dispossess the present corporation, which has lawfully acquired all the rights of its predecessors and authors.

Although we have considered all the other features and bearings of the case, we reach the conclusion that this defense finds ample support in the record, as well as in the law governing the case, and we shall rest our decision on that plea.

The principle which underlies that ground of resistance was discussed before this Court, and it received the serious attention which was commensurate with the importance of the results likely to flow therefrom, in the case of St. Julien vs. Railroad Company, 35 Ann. 924.

In that case, under the guidance of a most respectable authority, this Court crystalized the principle into the following rule : "One who permits a railroad company to occupy and use his land and construct its road (a *quasi* public work) thereon, without remonstrance or complaint, cannot afterwards reclaim it free from the servitude he has

permitted to be imposed upon it. His acquiescence in the company's taking possession and constructing its works under circumstances which made imperative his resistance, if he ever intended to set up illegality, will be considered a waiver. But while this presumed waiver is a bar to his action to dispossess the company, he is not deprived of his action for damages for the value of the land, or for injuries done him by the construction or operation of the road."

From the record we gather the following facts which have a bearing on this branch of the defense :

The lands in suit are situated at the point which was for many years the actual terminus of the railroad which had been built by the original incorporators, the New Orleans, Opelousas and Great Western Railroad Company, under a charter granted by the Legislature of Louisiana in 1853, and under the obligation to continue the construction of the road west of that point, namely, Berwick's Bay to the Sabine river.

In divers transactions, some in 1853, others in 1856, and others in 1857, that corporation obtained grants of lands for the construction of tracks, switches, depots, and other railroad appurtenances from R. B. and T. T. Brashear, the then owners of these lands, and from their legal representatives.

As the State of Texas soon became, in its trade with New Orleans, one of the principle feeders of the traffic of that road, it was found necessary, in view of the unfinished condition of the road, to reach Texas ports by steamers plying between the terminus of the road and Berwick's Bay and sundry points in Texas.

The needs of that kind of transportation soon required landing facilities at the Bay for freight, live cattle and passengers to and from the steamers, which resulted in additional grants of land, in order to meet the exigencies of the newly developed purposes from the then owners of the adjacent lands.

In July, 1869, the road, with all its branches and franchises, was bought at a United States marshal's sale by Charles Morgan, who owned and operated it as the "Morgan's Louisiana and Texas Railroad" until April, 1878, when the whole was acquired by the defendant corporation by purchase from him.

During Morgan's ownership many additions and improvements were made and erected, in order to supply means necessary to a double transportation, by land and water, and some additions have been made since the purchase of the present defendant.

Many of these improvements called for additional appropriations

of land, although many works were erected on water and some railroad tracks were laid on portions of the public streets, with permission of the municipal authorities of Morgan City.

Now plaintiff rests his claims of ownership under a probate sale made in the successions of R. B. and T. T. Brashear, in May, 1871, and many of the improvements and works for which additional tracks or strips of the lands which he claims were used, have been erected since the date of his purchase. And although he was all that time a resident of the place, the record is barren of any proof of the slightest remonstrance or complaint on his part against any of the acts of the company, either under Morgan or under the present corporation.

As to his predecessors, the proof of their acquiescence in every act of either the old company or of Morgan, in occupying portions of their lands for the purposes of their *quasi* public works which thus were almost continuously erecting, is still more affirmatively shown. Such an acquiescence dates as far back as 1857, when the owners of the Brashear plantation, laid out a town at that point, which in time became Brashear City, the name being afterwards changed to Morgan City.

On their sale maps, they marked out and specially designated the various portions of their lands which they then and there dedicated to the use of the railroad company.

Their express consent, which is more than an acquiescence, to the occupation by the company of the far greater portion of the lands now in suit, is contained in the various acts of transfer and grants which we have herein above referred to.

We note that these transfers are alleged by plaintiff to be null and void, for many reasons not necessary to be herein mentioned. For the purposes of the present discussion we are not required to pass upon that contention, as our consideration of them has been specially restricted to their effect as indicia of acquiescence, or absence of remonstrance or complaint; and not as muniments of title.

Plaintiff also contends that the acquiescence of his authors and of himself cannot benefit the alleged encroachments of Morgan during his ownership, because a natural person cannot exercise corporate rights. But this argument has already been met and answered in several adjudications of this court, and of the Supreme Court of the United States, in suits involving the discussion of the very rights which Morgan had acquired under his purchase of the Opelousas railroad in 1869. In the case of Morgan vs. Louisiana 93, U. S. 217, the Supreme Court in defining what were the franchises of which the pur-

chaser of the road had acquired at the marshal's sale, said: "But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked."

It takes no argument to show that the foregoing description impliedly includes the right of appropriating strips of land necessary to the construction of depots, cattle pens, coal bins, sheds and the like, without which this road could not have been successfully operated. State vs. Morgan, 28 Ann. 482; Fazende vs. Morgan, 31 Ann. 549; St. Julien's case, 35 Ann. 924.

Under the face of these authorities, we hold that, as one of the rights acquired by Morgan under his purchase, he became vested with all the franchises of the Opelousas railroad corporation, whose road was a *quasi* public work, for the successful operation of which was included the right of appropriating lands necessary for the construction of indispensable works.

Under the conclusions which we have reached, the defendant company is left in the occupation of the lands in suit, and plaintiff is not stripped of his right to urge such claims as he may have for the damages which may have been inflicted on him, or for the value of the lands which may have been taken from him.

Judgment affirmed.

Mr. Justice Todd recuses himself.