ROGERS, Justice.
 

 This is a petitory action in which the plaintiff is the appellant from a judgment
 
 *885
 
 recognizing his ownership of the property-claimed, subject to a servitude in favor of the defendant for railroad purposes, arising from unopposed occupancy. The judgment also reserves the rights of the parties as to any claims for damages, compensation, or other items which plaintiff may have against the defendant for its use and occupancy of the property, no monetary recovery having been sought in the suit.
 

 Plaintiff alleges ownership by his purchase on November 10, 1913, of a square of ground in the Second district of New Orleans, designated as Square No. 483, bounded by St. Louis, Toulouse, Telemachus, and Genois streets. He further alleges that defendant wrongfully and illegally entered upon his square of ground on which it laid its spur tracks to private industries located in other squares of ground and beyond plaintiff’s square of ground, and wrongfully claims possession and ownership of all that portion of his land occupied by the spur tracks.
 

 Defendant in its answer claimed no conventional title to the land nor any conventional servitude thereon. The defense which prevailed below is that defendant, as a public utility possessing the power of eminent domain, has acquired a servitude for railroad purposes across plaintiff’s square of ground, by actually constructing tracks across the property and by maintaining and using the tracks for many years in its operations as a public utility, to the knowledge and with the consent and acquiescence of defendant and his authors in title.
 

 Defendant also unsuccessfully pleaded the prescriptions of one, two, five, ten, and thirty years and a claim to a servitude across plaintiff’s land for railroad purposes by destination du pere de famille. Defendant reurges these pleas by answer to the appeal.
 

 Prior to his suit, plaintiff sold to the American Can Company that portion of his property which forms the corner of Toulouse and Genois streets, which was excepted from the judgment. None of the railroad tracks in dispute are located on that portion of the square of ground previously sold by plaintiff.
 

 We find no error in the judgment appealed from.
 

 There is no dispute between the parties as to the present location of the railroad tracks. According to the exhibits in the record, the main line tracks of the defendant are located on St. Louis street alongside Square No. 483. From its junction with the main line tracks on the river side of the Orleans Canal a spur •track, extending towards the lake, crosses Genois street and enters Square 483 near the corner of St. Louis street. This track, known as track No. 70 extends across the entire Square 483 to Telemachus street. From track No. 70, near the center of the square, another track, known as track No. 71, branches out and extends across the remainder of the square to Telemachus street. The tracks of the defendant which cross Square 483 also extend through the four squares of ground on the Lake side of that square. These squares are designated by the Nos. 500, 509, 526, and 527
 
 *887
 
 and abut St. Louis street on which the main line tracks of the defendant are located. A number of industrial plants located in those four squares are served by the spur tracks in question, as were a number of other industrial plants previously operated in the squares.
 

 The record shows that Henry E. Gumbel, the plaintiff, acquired the entire Square 483 by purchase from .Thomas Capo on November 10, 1913. Capo purchased the square from Louis S. Berg and his daughters, who had inherited their mother’s community interest, on July 14, 1913. Berg acquired the half of the square fronting Telemachus street from Santo Oteri on November 23, 1903 and the half of the square fronting on Genois street from the New Orleans Terminal Company, the defendant, on March 27, 1907. The Terminal Company acquired the half square sold to Berg, through expropriation proceedings, from the estate of Mrs. Frank Barker, on December 8, 1905.
 

 Louis S. Berg was the president of the defendant company from June 30, 1903, to February 11, 1907. From 1903 to 1907, defendant owned one-half of Square 483 and Berg owned the other one-half. From 1907 to 1913, Berg owned the entire square.
 

 The record shows that railroad tracks were constructed across Square 483 more than thirty years prior to the institution of this suit. Defendant contends that the tracks as presently existing are identical as to location with the tracks as originally constructed, Plaintiff, on the other hand, vigorously asserts that the location of the tracks across Square 483 has been changed from time to time since the date of the construction of the original tracks. We do not find it necessary to determine this disputed question of fact.
 

 It is certain plaintiff’s authors in title were aware of the existence of the tracks across the square and that they offered no objection thereto. Plaintiff admits that prior to his purchase he had examined the property and found railroad tracks extending across ' it. He also admits that he made no objection to the tracks until he demanded their removal shortly before he filed this suit. So that as far back as 1913, plaintiff was aware of the existence of railroad tracks on his property. And the record shows without contradiction that at least as far back as 1928 the tracks across plaintiff’s property have been located exactly where they are now located and that they have been used by defendant in its operations without objection on plaintiff’s part, until the time of his first protest early in the year 1936. In these circumstances, we find ample warrant for applying in defendant’s favor the well-recognized doctrine of acquisition of a servitude by unopposed use for a public purpose.
 

 The early leading case in our jurisdiction enunciating the doctrine is St. Julien v. Morgan’s Louisiana & T. R. R. & S. S. Co., 35 La.Ann. 924, at page 925, which lays down the rule in the following language, viz.:
 

 “Having thus permitted the use and occupancy of his land and the construe
 
 *889
 
 tion of a quasi public work thereon without resistance or even complaint, he cannot afterwards require its demolition, nor prevent its use, nor treat the Company erecting it as his tenant. He is not debarred from an action for damages by reason of the taking of the land and for'its value, but having acquiesced in the entry and encouraged if he did not invite it, he cannot afterwards affect to treat it as tortious. Considerations of public policy, not less than the suggestions of natural justice, require that- in such case the owner shall not be permitted to reclaim his property free from the servitude he has permitted to be imposed upon it, but shall be restricted to' his right of compensation. Goodin v. Cincinnati & W. Canal Co., 18 Ohio St. 169, 98 Am.Dec. 95.”
 

 The doctrine is also recognized and applied in the following cases, viz.: Bourdier v. Morgan’s Louisiana & T. R. R. & S. S. Co., 35 La.Ann. 947; Day v. New Orleans Pac. Ry. Co., 36 La.Ann. 244; Lawrence v. Morgan’s Louisiana & T. R. R. & S. S. Co., 39 La.Ann. 427, 2 So. 69, 4 Am.St.Rep. 265; St. Julien v. Morgan’s Louisiana & T. R. R. & S. S. Co., 39 La. Ann. 1063, 3 So. 280; Mitchell v. New Orleans & N. E. R. R. Co., 41 La.Ann. 363, 6 So. 522; Payne v. Morgan’s Louisiana & T. R. R. & S. S. Co., 43 La.Ann. 981, 10 So. 10; Lindner v. Yazoo & M. V. R. R. Co., 116 La. 262, 40 So. 697; McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42; Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562, 139 Am.St.Rep. 537; Moore Planting Co. v. Morgan’s Louisiana & T. R. R. & S. S. Co., 126 La. 840, 53 So. 22; Brewer v. Yazoo & M. V. R. R. Co., 128 La. 544, 54 So. 987; Pons v. Yazoo & M. V. R. R. Co., 131 La. 313, 59 So. 721; Louisiana Land Co. v. Blakewood, 131 La. 539, 59 So. 984; Roussel v. New Orleans Ry. & L. Co., 152 La. 517, 93 So. 758.
 

 And the application of the doctrine is not dependent upon the lapse of any specific prescriptive period and even a brief period of occupancy and use of the property by a public utility, with the knowledge, consent, or acquiescence of the landowner, will suffice to effectuate the doctrine in favor of the utility.
 

 Thus, in Moore Planting Company v. Morgan’s Louisiana & T. Railroad & S. S. Company, 126 La. 840, at page 872, 53 So. 22, 33; this court said:
 

 “These decisions [holding that a railroad which has gone into possession without title, but without opposition, and is in operation cannot be ousted by the owner, but has the right to continue in possession], be it noted, are not founded upon any law of prescription. The proof of this lies in the fact that the railroad is maintained in possession even though it has been in operation less than the shortest time required for prescription. Those decisions are founded upon the combined presumed consent of the owner of the land and the public interest. The owner of the land is presumed to have yielded, without an expropriation suit having been brought against him, what an expropriation suit would have compelled him to yield.”
 

 
 *891
 
 And in St. Julien v. Morgan’s Louisiana & T. Railroad & S. S. Company, 35 La.Ann. 924, at page 926, this court said:
 

 “Slight acts of acquiescence on the part of the owner will estop him from interfering with the running of a railroad. He will not be deprived of his claim for damages, or his right to enforce it in all proper modes, but if he has, in any sense, for the shortest period, clearly given the corporation, either by his express consent or by his silence, to understand that he did not intend to object to their proceeding with the construction and operation, he cannot, on non-payment of compensation, maintain ejectment.”
 

 It is clear that the spur tracks involved here serve a public and not a mere private purpose. The uncontradicted testimony in the record shows that the tracks are not restricted to the use of any single industrial plant, but, on the contrary, are available to any industrial plant which may locate on any of the now vacant sites in the area; that there are presently operating in the area three industrial plants which are served by the tracks, which, in the past, also served a number of other plants formerly located in this industrial area.
 

 But plaintiff contends that the defendant company is not operating a railroad and is not possessed of the power of eminent domain. Plaintiff’s contentions are untenable.
 

 Section 1479 of the Revised Statutes of 1870, as amended from time to time, the latest amendment being Act No. 176 of 1928, is the original eminent domain statute of the state. This statute confers the power of expropriation upon “any corporation, constituted under the laws of this State, for the construction of a railroad,” but does not specifically mention spur tracks. However, spur tracks are specifically mentioned in Act Nos. 73 and 74 of 1902 as being within the scope of the power of eminent domain.
 

 A case in point is Webster Sand, Gravel & Const. Co. v. Vicksburg, S. & P. Ry. Co., 129 La. 1096, 57 So. 529. There the purchaser of land sued to compel the removal from his property of a branch or spur track extending to a gravel pit about four miles, from the main line of the railroad company, there being no recorded servitude for this track across plaintiff’s land. The suit was brought within four years after the track was constructed and shortly after plaintiff had • purchased the property. Although this court held that plaintiff was not bound by his knowledge of an unrecorded servitude, it decided the case in favor of the defendant railroad company on the ground that such a track was within the scope of the well settled doctrine of the St. Julien and related cases.
 

 Moreover, according to its rules, which are in the record, the * Louisiana Public Service Commission (formerly the Louisiana Railroad Commission) has assumed and has been exercising jurisdiction for more than twenty years over industrial spur tracks as necessary parts of the public utility property of a railroad carrier. The right of the Commission to do this was judicially recognized in the case of Railroad Commission v. Kansas City Southern Ry. Co., 111 La. 133, 35 So. 487.
 

 
 *893
 
 In Kansas City, S. & G. Ry. Co. v. Louisiana Western R. R. Co., 116 La. 178, 40 So. 627, 5 L.R.A.(N.S.) 512, 7 Ann. Cas. 831, this court expressly recognized the existence of the power of eminent domain for the purpose of obtaining a right of way for the construction of a spur track designed to reach the industrial area and to serve, not a single industry, but a number of industries located in the area. Paragraphs 2 and 3 of the syllabus, summarizing ,the point decided, read as follows, viz.:
 

 “All railroads are declared by the Constitution to be public highways and all railroad companies to be common carriers. This declaration applies, not only to main tracks, but also to all subsidiary tracks used for the purposes of railroad traffic.
 

 “Where a proposed spur track is intended for the transfer of freight in car load lots to and from a number of industrial plants in a town or city, its use is open to the public, and the railroad company constructing such a track has the right to expropriate necessary crossings over the spur tracks of another railroad company. Act No. 74, p. 103, of 1902.”
 

 Plaintiff, in support of his contention, cites River & Rail Terminals, Inc., v. Louisiana Ry. & Nav. Co., 171 La. 223, 130 So. 337. But the circumstances of that case clearly distinguish it from the instant case. There plaintiff’s suit was to force the removal of a spur track illegally, tortiously, and surreptitiously laid across its property less than a month prior to the institution of the suit. And the court specifically found that the plaintiff had neither consented nor acquiesced in the taking of its land. What was said in the opinion as to the right of expropriation must be considered in the light of those findings of fact. In its discussion of the question, this court emphasized the fact that the spur track involved there, differently from the spur track involved here, was constructed solely for the purpose of serving a single industry, served only that purpose and was not open to the use of other business enterprises in that vicinity.
 

 In Tremont & Gulf Ry. Co. v. Louisiana & A. Ry. Co., 128 La. 299, 54 So. 826, this court applied the doctrine of the St. Julien Case to a spur track extending to an ice plant and to a planing mill. In Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562, 139 Am.St.Rep. 537, a case involving the present defendant, this court recognized the doctrine of the St. Julien Case as applicable to a switch track. And in Lawrence v. Morgan’s Louisiana & T. R. R. & S. S. Co., 39 La.Ann. 427, 2 So. 69, 4 Am.St.Rep. 265, this court recognized the doctrine of the St. Julien Case as extending to all necessary appurtenances of a railroad system, although there is no discussion of spur tracks in the opinion.
 

 There are a number of cases from other jurisdictions referred to in defendant’s brief which are in line with the doctrine of the St. Julien and related cases. But we do not find it necessary to refer to or quote them. The discussion of the question in the authorities and the reasonableness of the doctrine invoked by de
 
 *895
 
 fendant and applied in this state is summed up in the following quotation from Lewis on Eminent Domain, (3d Ed.) vol. I, § 264, pp. 532, 533, viz.:
 

 “There is a sharp conflict of authority as to whether switch and spur tracks to private property are a public use for which property may be condemned. They seem a proper mode of making the facilities of the railroad available and, if open to all who are situated so as to be able to use them, upon equal terms, there is no sound reason why they should not be regarded as a public use.”
 

 And in the very recent case of United States v. California, 297 U.S. 175, 56 S. Ct. 421, 80 L.Ed. 567, the Supreme Court of the United States classified the state belt railroad as a “common carrier engaged in interstate commerce by railroad.” In other words, that a belt or terminal railroad is a railroad corporation and a public utility, and not a mere private enterprise.
 

 Taking up plaintiff’s contention that defendant as a terminal railroad company is without any right to exercise the power of eminent domain, we find that the company, under its former corporate name of New Orleans & San Francisco Railroad Company, is the holder of an extensive franchise from the city of New Orleans. Under its franchise defendant was authorized to construct, maintain, and operate its lines of railroad tracks along, across, and over streets, highways, and public places of the city, and to acquire for railroad purposes by expropriation or otherwise all property needed for such purposes, such as tracks, spurs, side tracks, yards, etc. The grantee was also given the right under its franchise to extend its terminal area, and to construct switches and side tracks to industries that from time to time might be established adjacent to its main line tracks and terminal properties and to use and cross the intervening streets for tracks.
 

 The validity of defendant’s franchise was maintained in Capdevielle v. New Orleans & S. F. R. R. Co., 110 La. 904, 34 So. 868. In that case, this court specifically recognized defendant, the franchise grantee, as a public utility, entitled to the same rights as any other railroad company.
 

 As disclosed by the testimony in the record, defendant’s terminal railroad system was constructed more than thirty years ago and has been in continuous operation since that time. Its main line tracks extend from Port Chalmette in St. Bernard parish, along St. Louis street in New Orleans, to Shrewsbury in Jefferson parish. No trains are operated by defendant into or out of New Orleans. Defendant operates a passenger station in New Orleans, into and out of which passenger trains of the New Orleans & Northeastern Railroad and of
 
 the
 
 Gulf, Mobile & Northern Railroad operate, using defendant’s main line tracks on St. Louis street for that purpose, under contracts with defendant for such user. No freight trains are operated by defendant into or out of New Orleans, but defendant owns four freight yards in that city. The outbound freight trains of the New Orleans & Northeastern Railroad are made. up
 
 *897
 
 and its inbound freight trains are broken' up in one of those yards. At various points in its system, defendant’s tracks are connected by interchange tracks with the tracks of practically every railroad entering New Orleans. Defendant’s principal business consists in moving loaded and empty freight cars between these interchange tracks and the numerous industrial spur tracks forming part of its railroad system, defendant acting as a distributor of incoming freight cars and as a collector of outgoing freight cars for the various railroads entering New Orleans. Defendant’s yards are also used for the storage of freight cars.
 

 The shipments of freight moving over defendant’s tracks come from or go ' to every section of the country. Defendant is paid a switching charge for every freight car moving over its tracks, the charge being paid by the railroad moving the car. On some shipments the charge is passed on to the shipper by the railroad and on other shipments the railroad absorbs the charge.
 

 The testimony in the record also shows that defendant operates engines and engine crews; that one of its switch engines moves almost daily over the industrial spur tracks involved here and that it maintains and operates shops for the repair of engines and cars. Defendant, as shown by the record, is a part of the Southern Railway System.
 

 The right of a railroad to expropriate property for terminal purposes is impliedly recognized in Lawrence v. Morgan’s Louisiana & T. R. R. & .S. S. Co., 39 La.Ann. 427, 2 So. 69, 4 Am.St.Rep. 265.
 

 And the right of a terminal railroad to exercise the power of eminent domain has been maintained in numerous cases in other jurisdictions. See Collier v. Union Ry. Co., 113 Tenn. 96, 83 S.W. 155; Riley v. Charleston Union Station Co., 71 S.C. 457, 51 S.E. 485, 110 Am.St.Rep. 579; Savannah River Terminals Co. v. Southern Ry. Co., 148 Ga. 180, 96 S.E. 257; Ryan v. Louisville & N. Terminal Co., 102 Tenn. 111, 50 S W. 744, 45 L.R. A. 303. See, also, Lewis on Eminent Domain (3d Ed.) vol. I, § 263, p. 527.
 

 Although he has admitted both judicially and extra judicially defendant’s ownership and possession of the spur tracks, plaintiff apparently for the first time, advances the contention in his brief that as he is the owner of Square 483 he is also the owner of the tracks located on the square. The evidence, however, shows that defendant constructed the tracks and has continuously possessed and used them for a period of more than thirty years. And it is immaterial to determine who has the technical title to the tracks on the issue of whether the case falls within the doctrine of the St. Julien and related cases. The underlying theory of the jurisprudence established by those cases is that the “use and occupancy” of land by a public utility for a public purpose with the consent ,or acquiescence of the owner, in the exercise of a servitude of fact, creates such a servitude in law, and. limits the landowner’s right of acti.op to a claim for compensation or for-damages. ...
 

 
 *899
 
 Conceding, without deciding, the correctness of plaintiff’s contention that the sale in 1907 of its half of Square 483 by defendant to Berg, who then owned the other half, extinguished the existing servitude in defendant’s favor, that would not and could not prevent the subsequent creation of a new servitude for railroad purposes in defendant’s favor across the entire square by virtue of defendant’s unopposed exercise of the servitude from 1907 to 1936, during which period the property was owned successively by Berg, Capo, and the plaintiff. And this is so regardless of the legal effect of prior events.
 

 The decisions in the St. Julien and subsequent related cases establish a method of creating a servitude not found in any article of the Civil Code covering servitudes. Since this method of creating a servitude (by unopposed use and occupancy) is extra-codal, plaintiff’s argument based on the codal articles creating, regulating, and extinguishing servitudes is not appropriate.
 

 In view of our conclusion that plaintiff’s property is subject to a servitude in favor of defendant for railroad purposes, arising from unopposed use and occupancy, it becomes unnecessary for us to pass on defendant’s pleas of prescription and claim to a servitude by destination.
 

 The judgment of the district court taxes the costs against the defendant. By its answer to the appeal, defendant asks that the judgment be amended so as to assess the costs against the plaintiff. We think defendant is entitled to this.
 

 Article 549 of the Code of Practice provides that the costs shall be paid by the party cast. Although the judgment recognizes plaintiff’s ownership of Square 483, it also recognizes defendant’s servitude on the square. Since defendant never at any time attacked plaintiff’s title, the real contest in this case is over the servitude asserted by defendant. The contest was decided by the court below in defendant’s favor, and we have concluded to affirm the judgment. Therefore, plaintiff is really the party cast in the suit and should pay the costs thereof.
 

 For the reasons assigned, ’the judgment appealed from is amended so as to tax the costs against plaintiff instead of against defendant, and, as amended, it is affirmed. Plaintiff to pay also the costs of the appeal.
 

 O’NIELL, C. J., absent.