REGAN, Judge.
Plaintiff, Clarence J. Perret, instituted this suit endeavoring to enjoin the defendant, Louisiana Southern Railway Company, from operating and maintaining a portion of track located on his property, designated as Parcels A and B of Lot G-2S, asserting that the track was constructed by the railroad without any legal authority, and that its presence thereon depreciates the value thereof.
Defendant pleaded the exceptions of ratione materiae and of no right or cause of action, which were referred to the merits-of the case. The defendant then answered and, in substance, asserted that it was rightfully operating its tracks across plaintiff’s property by virtue of a servitude established in its favor as a public utility by the owner thereof in the year of 1922.
From a judgment in favor of defendant dismissing plaintiff’s rule nisi for a preliminary writ of injunction, he has prosecuted this appeal.
The record reveals that the defendant is-a Louisiana corporation, which has, since its organization in the year of 1897, been engaged in the operation [1] of a line of railroad, located in the Parishes of Orleans, St. Bernard and Plaquemines. .
The defendant possesses the power of eminent domain by virtue of the statutory law of the State of Louisiana.[2]
There is no registered deed granting the defendant a fee title to or servitude over the property and this fact, according to the testimony adduced by plaintiff on the trial hereof and the oral argument made in con *512 formity therewith before this court, initially provoked this litigation.
The tracks were constructed more than 37 years ago, or in 1922, as part of the defendant’s main line extending from Poy-dras Junction to- Shell Beach, which was known as the Shell Beach Branch. The tracks were continuously maintained and used as part of the main line from 1922 to 1938. From the year 1938 to the date of the institution of this suit[3], the tracks have formed part of a public team track or spur, which extends from the defendant’s main line leading to Plaquemines Parish across •other property[4] owned by- the plaintiff, thence across the state highway, thence across Parcels A and B of Lot G-25, and thence to a point beyond the East property line of Parcels A and B to its terminal. Since 1938 to date, this public team track or spur has been continuously operated as a public facility; however, this fact is disputed by the plaintiff. From January 1, 1945 to November 24, 1958, the defendant ■operated a total of 633 cars over this track or spur in carrying out its service to the •public.
The tracks, to reiterate, were originally constructed in connection with the relocation of the main line track of the Shell Beach Branch in the vicinity of Poydras. This relocation of track was necessitated by the crevasse, which occurred in about 1922, at Poydras. At the time of the con•struction of the tracks, the land on which •they are located, together with most of what was then known as Poydras Plantation, was owned by the late John S. Russell, who did not oppose the construction and operation of the tracks across the land now designated as Parcels A and B of Lot ■G-25. This fact is substantiated by virtue of his sale of Lot G-25 to Miss Edith Fasterling[5], wherein Russell acknowledged defendant’s servitude across the property by setting forth in the description thereof a notation that the property sold:
“ * * * has a servitude of the Louisiana Southern Railway Branch Line-to Shell Beach through the southwest corner of said described Lot G-25.”
In a subsequent sale of property by Harry W. Huth to George E. Hazelburger, Jr.,[6] the vendor; and vendee acknowledged therein the servitude in favor of the defendant across the property, setting forth in the description of Lot G-25 a similar notation with reference to the servitude, such as occurred in the prior sale by Russell. Similar written acknowledgement of the defendant’s servitude across Lot G-25 is also found in the description of the property contained in a judgment rendered on July 30 1940, two years after the tracks had been converted into a public team track, in the Succession of George E. Hazel-burger, Jr.[7]
While the deed dated July 20, 1949, by virtue of which plaintiff acquired the parcels A and B of Lot G-25, contained no reference to the defendant’s servitude, the record indicates that plaintiff had actual knowledge of the aforementioned recitations contained in the chain of title, acknowledging the existence of defendant’s servitude across the property since he testified that he had the title to his property examined when he purchased it and twice thereafter for the purpose of negotiating loans thereon.
It is conceded that plaintiff acquired title to the property in 1949; however, he contends that a servitude was never granted to the defendant across the property on *513 which the spur track rests and he insists that the defendant has failed to produce any evidence to show the acquisition of a servitude.
Since Russell initially permitted defendant to enter thereon and construct its tracks across the property, defendant contends it is now too late for plaintiff to endeavor to reclaim the land free of the defendant’s servitude or to interfere with the future operation of the railroad.
It is now well settled that when a railroad corporation or other corporate utility possesses the power of eminent domain appropriates property for the purpose of serving the public and goes into possession thereof without title but without objection on the part of the owner of the property,. it cannot be dispossessed by the owner. The owner thereof has been presumed to have yielded without an expropriation suit what such a suit would have compelled him to yield. This is what is known as the doctrine of acquiescence and estoppel. The rationale thereof was first enunciated by the Supreme Court of Louisiana in 1883 in the case of St. Julien v. Morgan’s Louisiana & Texas Railroad Co.[8], wherein the organ of the court said:
“ * * * Having thus permitted the use and occupancy of his land and the construction of a quasi public work thereon without resistance or even complaint, he cannot afterwards require its demolition, nor prevent its use, nor treat the Company erecting it as his tenant. He is not debarred from an action for damages by reason of'the taking of the land and for its value, but having acquiesced in the entry and encouraged if he did not invite it, he cannot afterwards affect to treat it as tortious. Considerations of public policy, not less than the suggestions of natural justice, require that in such case the owner shall not be permitted to reclaim his property free from the servitude he has permitted to be imposed upon it, but shall be restricted to his right of compensation.”
The case of River & Rail Terminals, Inc. v. Louisiana Ry. & Nav. Co.[9], principally relied upon by plaintiff, is not applicable to these facts. The Supreme Court in the first case of Gumbel v. New Orleans Terminal Co.,[10] very clearly distinguishes it from this case as the following extract therefrom will serve to point out:
“Plaintiff, in support of his contention, cites River & Rail Terminals, Inc. v. Louisiana Ry. & Nav. Co., * * *. But the circumstances of that case clearly distinguish it from the instant case. There plaintiff’s suit was to force the removal of a spur track illegally, tortiously, and surreptitiously laid across its property less than a month prior to the institution of the suit. And the court specifically found that the plaintiff had neither consented nor acquiesced in the taking of its land. What was said in the opinion as to the right of expropriation must be considered in the light of those findings of fact. In its discussion of the question, this court emphasized the fact that the spur track involved there, differently from the spur track involved here, was constructed solely for the purpose of serving a single industry, served only that purpose and was not open to the use of other business enterprises in that vicinity.”
*514 In this case, despite plaintiff’s adverse contention, it has been clearly established as a fact that the tracks over his property had been used to serve the general public for in excess of thirty years. Apparently this latter fact among others motivated the defendant to plead the prescriptions of one, two, ten and thirty years. Howevér, as the court so appropriately expressed itself in Moore Planting Co. v. Morgan’s Louisiana & T. Railroad & S. S. Co., cited supra, the defendant’s right is not founded on any law of prescription [126 La. 840, 53 So. 33]:
“These decisions (holding that a railroad which has gone into possession without title, but without opposition, and is in operation cannot be ousted by the owner, but has the right to continue in possession), be it noted, are not founded on any law of prescription. The proof of this lies in the fact that the railroad is maintained in possession even though it has been in operation less than the shortest time required for prescription.” (Explanation added.)
Plaintiff submitted no evidence in support of his very basic assertion that the tracks crossing his property “were constructed * * * with no legal right or authority.” On the other hand, the uncon-tradicted evidence submitted by defendant established that the tracks were constructed in the year of 1922 as part of a track relocation program necessitated by the crevasse which occurred at Poydras, without any opposition being made thereto by Russell, who was then the owner of the property. By virtue of the well established jurisprudence the defendant thereby acquired a good and valid servitude across the property. The only action to which the then landowner, Russell, was thereafter entitled was an action for the value of the land taken and for damages that may have been incurred as a result thereof by his property. Whether the landowner availed himself of this right is not shown. In any event, plaintiff is not attempting to assert such a right herein.
In oral argument before this court, plaintiff’s counsel insisted that the defendant’s tracks were abandoned and that after plaintiff’s acquisition of Parcels A and B on July 20, 1949, defendant never used the tracks without the consent of plaintiff or the former owners. These assertions are not supported by the record. On the contrary it reveals affidavits[11] to the effect that the tracks, having been constructed without opposition from the owner in the year 1922 were continuously maintained and operated to the date of the institution of plaintiff’s suit in the month of November 1958.
Plaintiff, in the last analysis, contends that the recitals relating to the defendant’s servitude contained in the acts of sale here-inabove referred to, are concerned with an old right-of-way which was abandoned as the result of the 1922 crevasse. Plaintiff did not so testify in the lower court and the record contains no evidence in support of this contention. By reference to the acts themselves, we find that the recitals acknowledging the servitude were made 18, 14 and 12 years after the relocation of the defendant’s tracks in 1922 to their present location, and hence, in the absence of evidence to the contrary, they are certainly presumed to relate to the servitude as it existed at the time the recitations were made.
*515 In conclusion, we are of the opinion that the mere fact that in 1922 the landowner, Russell, took no steps to prevent the construction and operation of the track sufficed to establish defendant’s right of servitude across this property, and it was not dependent upon any period of prescription. Not only did Russell agree to defendant’s acquisition of this servitude, but he acknowledged the existence thereof in a deed dated in the year of 1934, when he conveyed the property to Miss Fasterling. Therefore, at the time plaintiff acquired the property in July of 1949, defendant’s servitude was then an established, vested right of long standing. No protest or opposition on the part of plaintiff now can serve to divest defendant of this servitude.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., recused himself.

. Both in intrastate and interstate commerce.

. LSA-R.S. 19:2.

. November 3, 1958.

. Plaintiff makes no complaint thereof.

. By act of sale before E. A. Parsons, N. P., dated December 12, 1934, and registered in O. O. B. 39, folio 539 of the Parish of St. Bernard.

. By act before James Condon, N. P., dated February 11, 1936, and registered in C. O. B. 40, folio 466.

. No. 2353 of the Docket of the 25th Judicial District Court for the Parish of St. Bernard.

. 1883, 35 La.Ann. 924. See also Moore Planting Co. v. Morgan’s Louisiana & T. R. & S. S. Co., 1910, 126 La. 840, 53 So. 22; McCutchen v. Texas & P. Ry. Co., 1907, 118 La. 436, 43 So. 42; Taylor v. New Orleans Terminal Co., 1910, 126 La. 420, 52 So. 562; Webster Sand, Gravel & Construction Co. v. Vicksburg S. & P. Ry. Co., 1912, 129 La. 1096, 57 So. 529; Gumbel v. New Oleans Terminal Co., 1937, 186 La. 882, 173 So. 518.

. 1930, 171 La. 223, 130 So. 337.

. 1937, 186 La. 882, 173 So. 518, 521.

. Plaintiff insists in his brief that these affidavits were not introduced on the trial of the merits and he was not afforded an opportunity to object to their introduction, and for these reasons, the affidavits should not be considered by the court. All of the affidavits filed bear on their face the inscription: “For use in connection with the exception to the jurisdiction, cx-ception of no right or cause of action, and answer to the rule for preliminary injunction.” In addition thereto the record reflects that these affidavits were offered in evidence by defendant’s counsel and accepted by the court to apply to all phases of the case without objection by plaintiff’s counsel.