288 So.2d 37 (1973)
Shannon HARRISON and S. Gordon Reese
v.
LOUISIANA POWER AND LIGHT CO.
No. 53506.
Supreme Court of Louisiana.
December 3, 1973.
Rehearing Denied January 11, 1974.
Paul B. Deal, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, for plaintiffs-applicants.
Andrew P. Carter, Eugene G. Taggart, J. Wayne Anderson, Monroe & Lemann, New Orleans, for defendant-respondent.
CALOGERO, Justice.
May defendant Louisiana Power & Light Co. acquire a servitude upon plaintiff's land by occupancy of less than one year against the landlord's express will *38 Is the St. Julien[1] (or Gumbel[2]) doctrine valid? If so, is it applicable in the instant case? If the doctrine is not valid, or if simply not applicable, may plaintiffs cause the removal of one (or more) power lines, and overhanging cross arms, wires and appurtenances from the property.
We granted writs[3] upon plaintiffs' application to review an adverse judgment of the Fourth Circuit Court of Appeal.[4] Answers to the foregoing questions and resolutions of certain factual issues inherent in those questions govern our disposition of the case.
Plaintiffs, complaining that defendant trespassed by placing on their property four power lines (with poles, cross arms, wires and other appurtenances, referred to hereinafter simply as appurtenances) without permission and over their protest, sought reimbursement for physical damages to their land near the poles, committed by defendant incident to the poles' construction. A $2,000 award was affirmed by the Court of Appeal. As writs in this regard were neither sought nor granted this part of the judgment is final and not subject to our review.
Relative to the trespass by placement of the poles and appurtenances on their property (and this is the matter presently before us) plaintiffs did not seek either damages or reimbursement for the property (or servitude) taken, but rather, simply prayed for removal of the poles and their appurtenances.
The trial judge found that prior to commencement of construction plaintiffs refused defendant a conventional right of way, and that defendant nonetheless entered upon the property without plaintiffs' knowledge or permission, and placed the poles and appurtenances partially upon plaintiffs' land. The judge nonetheless refused to order removal of the poles and/or their appurtenances because after plaintiffs discovered the encroachment (after completion of construction) they waited almost a year before filing suit.[5]
The trial court found this eleven month delay in bringing suit a sufficient acquiescence to invoke the jurisprudential rule first enunciated in St. Julien v. Morgan L. & T. R., supra, and affirmed in Gumbel v. N. O. Terminal Co., supra, and dismissed the injunction portion of plaintiffs' petition.
The Court of Appeal did not agree that there was any acquiescence on the part of plaintiffs after the construction, but affirmed anyway, finding that plaintiffs, prior to construction, had agreed and acqueisced to the general location of the power line (and understood that there would be an overhang by the cross arms over their property). They concluded that *39 this was enough to permit St. Julien to apply, even though at least one of the poles was admittedly, contrary to plaintiffs' wishes, placed partially on plaintiffs' property. The Court of Appeal found further that plaintiffs granted defendant permission to trim trees within the boundary fence which interfered with the new power line. Additionally, they accepted the testimony of defendant's expert (Mr. Roland P. Bernard, a registered engineer) who said only one of four poles encroached,[6] rather than the testimony of plaintiffs' expert (Mr. R. S. Burnside, Jr., a registered surveyor and engineer) who testified that three of the four poles encroached.[7]
Our findings, upon review of the record, are partially in accord and partially at variance with the lower courts.
Relative to the "general" location of the poles, plaintiffs, while refusing defendant any servitude at all upon their land, simply acknowledged after defendant's agent advised that defendant would place the pole one foot off the property, that they could not prevent defendant from doing so. We cannot construe this to imply that plaintiffs gave defendant any permission at all. Nor can we construe this response as inferentially agreeing to allowing an overhang of the appurtenances.[8]
Nor is plaintiffs' permitting defendant to trim trees overhanging the State's right of way any aid to defendant in showing prior permission or acquiescence to the encroachment.[9] Permission to trim plaintiffs' trees was apparently sought because a utility company cannot cut branches overhanging a public right of way without the owner's consent, Tissot v. Great So. T. & T. Co., 39 La.Ann. 996, 3 So. 261 (1887); Fontenot v. Central La. Elec. Co., 147 So.2d 773 (La.App.1962).
With respect to the contrary positions of the parties on the number of poles which encroached, we agree with the finding of the Court of Appeal in this respect, that only one of the four poles did so.
The St. Julien doctrine which both lower courts applied, to plaintiffs' dismay, was established in 1879. The defendant railway company in that case entered onto plaintiff's land without permission and constructed a railway upon the land without purchasing or expropriating the property. The court there found that the plaintiff landowner,
". . . did not invoke the arm of the law at the time when it could have been of service to him, but on the contrary acquiesced in the defendant's taking possession and using his property, encouraged it to prosecute its work by abstaining from any attempt to prevent it, and made no complaint in a court of law of the injuries inflicted upon him *40 until the defendant had expended large sums of money in completing its line. Having thus permitted the use and occupancy of his land and the construction of a quasi public work thereon without resistance or even complaint, he cannot afterwards require its demolition, nor prevent its use, nor treat the Company erecting it as his tenant. He is not debarred from an action for damages by reason of the taking of the land and for its value, but having acquiesced in the entry and encouraged if he did not invite it, he cannot afterwards affect to treat it as tortious. Considerations of public policy, not less than the suggestions of natural justice, require that in such case the owner shall not be permitted to reclaim his property free from the servitude he has permitted to be imposed upon it, but shall be restricted to his right of compensation. Goodin v. Cincinnati, 18 Ohio [St.], 169," (Emphasis ours) Id. 35 La.Ann. at 925-926.
Gumbel was decided in 1937. There plaintiff landowner brought a petitory action against the defendant for wrongfully entering upon his square of ground and laying spur tracks. The record in that case showed that the tracks were constructed more than thirty years prior to institution of suit. Plaintiffs' authors in title knew of and made no objection to the tracks. Prior to plaintiff's purchase of the land he inspected it and learned of the tracks yet he made no objection to the presence of tracks until just prior to instituting suit some 24 years after his purchase of the property. Based upon these facts the court there said:
"In these circumstances, we find ample warrant for applying in defendant's favor the well-recognized doctrine of acquisition of a servitude by unopposed use for a public purpose." Id. 173 So. at 520.
The St. Julien doctrine and the cases which thereafter relied upon it are founded on principles of natural equity and public policy. It declares that a property owner is prevented from unduly burdening or disrupting a public purpose use of his property when he has remained silent and acquiesced in such use.
An underlying reason supporting the doctrine in the cited cases is that since a public utility has the right of expropriation, allowing retention of the property taken extra-legally, upon payment of just compensation merely avoids an eviction and subsequent reacquisition by expropriation.[10]
While there may be some doubt as to whether such an extrastatutory means of acquiring a real right is available, we need not in this case re-examine the validity of St. Julien, so long entrenched in our jurisprudence, for we are of the opinion that the facts in the case at hand do not begin to reflect that plaintiffs either agreed to, or acquiesced in, the construction of a power line on or over their property.
As we have found the plaintiffs never consented to defendant's placing the poles on plaintiffs' land or to placing them such that their appurtenances would overhang plaintiffs' land, and since plaintiffs' negotiating for eleven months in an effort to resolve defendant's problem can under no reasonable stretch of the imagination be construed as an acquiescence to the use of their land by defendant, we conclude that no servitude was created in favor of defendant on plaintiffs' property, under the legal principle espoused in St. Julien, or otherwise.
*41 For the foregoing reasons the judgments of the District Court and the Court of Appeal, insofar as they dismiss that portion of plaintiffs' petition seeking an injunction, are reversed.
It is hereby ordered adjudged and decreed that defendant Louisiana Power and Light Co. be and they are enjoined to remove from the property of plaintiffs' Shannon Harrison and S. Gordon Reese the poles, cross arms, wires and appurtenances which encroach (to the extent found by the Court of Appeal and affirmed hereinabove) upon, or over such property, and they are enjoined and prohibited from making any further use of the said plaintiffs' property.
Reversed and rendered.
SANDERS, C. J., concurs in the decree.
BARHAM, J., concurs with reasons.
BARHAM, Justice (concurring).
I fully concur in the result obtained by the majority which orders the defendant to remove poles, cross arms, wires and appurtenances which encroach upon and over the plaintiffs' property. However, I would not have tried to distinguish the present case from St. Julien v. Morgan L. & T. R. Co., 35 La.Ann. 924 (La.1883) and Gumbel v. N. O. Terminal Co., 186 La. 882, 173 So. 518 (1937). These two cases and a long line of cases[*] in between, should be specifically overruled. These cases apparently stand for the proposition that a servitude may be acquired by "acquiescence". Our Civil Code sets forth the only methods by which predial servitudes may be acquired. We have analogized the use of the property of others by public utilities for conveying electricity to the predial servitudes provided for in our Civil Code. These servitudes simply cannot be acquired by "acquiescence".
Moreover, the St. Julien, Gumbel and other cases do violence to Louisiana Constitution of 1921, Article 1, § 2:
"No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." (Emphasis supplied.)
Louisiana Power and Light Co., by admission of its counsel before us, acquires all of its servitudes along highways through "acquiescence". This defendant has turned a so-called equitable doctrine created by this Court in the early days of the railroads, into a most inequitable, unlawful and unconstitutional method of expropriation of private property without due process, and without just compensation. This Court should firmly reject the St. Julien doctrine and overrule the entire line of cases which are not only erroneous in law, but inequitable in practice.
I respectfully concur.
NOTES
[1] In St. Julien v. Morgan L. & T. R. Co., 35 La.Ann. 924 (La.1883), the Louisiana Supreme Court in effect created an extra-statutory means of acquiring a servitude, when it determined that a person who has "permitted the use and occupancy of his land and the construction of a quasi public work thereon without resistance or even complaint, . . . cannot afterwards require its demolition, nor prevent its use, nor treat the Company erecting it as his tenant."
[2] In Gumbel v. N. O. Terminal Co., 186 La. 882, 173 So. 518 (1937), a decision following enactment of the 1921 Constitution with its provision that ". . . private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid," La.Const. Art. 1 § 2, this Court affirmed the holding in the earlier St. Julien case and stated "The underlying theory of the jurisprudence established by those cases is that the `use and occupancy' of land by public utility for a public purpose with the consent or acquiescence of the owner, in the exercise of a servitude of fact, creates such a servitude in law and limits the landowner's right of action to a claim for compensation or for damages.
[3] Harrison v. Louisiana Power & Light Co., 278 So.2d 503 (La.1973).
[4] Harrison v. Louisiana Power & Light Co., 274 So.2d 785 (La.App. 4th Cir. 1973).
[5] In the interim plaintiffs unsuccessfully negotiated with defendant for an acceptable monetary settlement incident to the unauthorized taking.
[6] The lower court adopted as factually correct the testimony of defendant's expert that the appurtenances of all four poles extended over plaintiffs' property and that as to the four poles, one was 37/100ths of a foot located inside of or onto plaintiffs' property, and the remaining three were 38/100ths, 32/100ths, and 88/100ths of a foot outside of plaintiffs' property, or from the property to the near edge of the poles, respectively.
[7] One by 13 inches, one by 4 inches, and one by 1¾ inches, with the fourth pole 5 inches away from plaintiffs' property.
[8] Defendant, of course, must show creation of a servitude to permit his appurtenances to overhang plaintiffs' property, for, under Art. 505 La.C.C. plaintiffs' "ownership of the soil carries with it the ownership of all that is directly above and under it." Defendant would thus argue that since plaintiffs "agreed" they could put the poles one foot off the property plaintiffs surely must have known that the cross arms, etc., would extend over the property. For defendant to rely upon so inconclusive a remark as plaintiffs negative comment referred to above, to aid their argument that a real servitude was created, flies in the teeth of La.C.C. Art. 753: "Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected."
[9] The Court of Appeal concluded that this permission was granted on the basis of testimony by defendant's agent, disputed by plaintiff.
[10] It should be noted that in the case at hand there is no showing of such public necessity as would have justified expropriation of this property had defendant chosen to proceed in the normal fashion. Defendant had ample State right of way off plaintiffs' property on which to place its poles. They simply preferred to place them upon private property in order to avoid having to relocate them if and when the State Department of Highways at some future date should widen the existing highway.
[*] Bourdier v. Morgan's Louisiana & T.R.R. & S.S. Co., 35 La.Ann. 947; Day v. New Orleans Pac. Ry. Co., 36 La.Ann. 244; Lawrence v. Morgan's Louisiana & T.R.R. & S.S. Co., 39 La.Ann. 427, 2 So. 69, 4 Am.St.Rep. 265; St Julien v. Morgan's Louisiana & T.R.R. & S.S. Co., 39 La.Ann. 1063, 3 So. 280; Mitchell v. New Orleans & N.E.R.R. Co., 41 La.Ann. 363, 6 So. 522; Payne v. Morgan's Louisiana & T.R.R. & S.S. Co., 43 La.Ann. 981, 10 So. 10; Lindner v. Yazoo & M.V.R.R. Co., 116 La. 262, 40 So. 697; McCutchen v. Texas & P.Ry. Co., 118 La. 436, 43 So. 42; Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562, 139 Am. St.Rep. 537; Moore Planting Co. v. Morgan's Louisiana & T.R.R. & S.S. Co., 126 La. 840, 53 So. 22; Brewer v. Yazoo & M.V. R.R. Co., 128 La. 544, 54 So. 987; Pons v. Yazoo & M.V.R.R. Co., 131 La. 313, 59 So. 721; Louisiana Land Co. v. Blakewood, 131 La. 539, 59 So. 984; Roussel v. New Orleans Ry. & L. Co., 152 La. 517, 93 So. 758.