391 So.2d 30 (1980)
Crit H. ROGERS, III et al., Plaintiffs and Appellees,
v.
LOUISIANA POWER & LIGHT COMPANY, INC. et al., Defendants and Appellants.
No. 7800.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1980.
*32 Theus, Grisham, Davis & Leigh, Brian E. Crawford, Monroe, for defendants and appellants.
Joseph M. Henry, Jr., Natchitoches, for plaintiffs-appellees.
Before CULPEPPER, CUTRER and SWIFT, JJ.
CULPEPPER, Judge.
This case involves the St. Julien doctrine. Plaintiffs are co-owners of a residential subdivision in the city of Natchitoches. They filed this suit against defendant, Louisiana Power & Light Company (LP&L), for damages for trespass caused by an electric line on their property without a servitude. They also sought an injunction ordering removal of the line. The district court awarded plaintiffs $20,000 for diminution in the value of their property but denied injunctive relief. LP&L appeals. Plaintiffs did not appeal nor answer the appeal.
The substantial issues are: (1) Does defendant own the servitude either under the St. Julien doctrine or under LSA-R.S. 19:14? (2) If so, are plaintiffs entitled to compensation for the servitude?
On November 27, 1976, the property was purchased by plaintiff, Joseph M. Henry, Jr., from Mrs. Louise Schuman. In 1950, Mrs. Schuman had entered into a servitude agreement with LP&L, granting permission to construct and maintain the power line and poles. The deed described the location of the servitude as lying across "the Northwest corner of Section 77, Township 9 North, Range 7 West." Also, the servitude agreement was recorded in the mortgage records only. The power line in dispute actually lies in Section 78 of plaintiff's property. Defendants admit that the discrepancy in the section number was the result of a typographical error, and that the section actually intended by the parties was Section 78. On this basis, the trial court ruled that the written right of way agreement was insufficient to put plaintiffs, as third party purchasers, on notice of the existence of the servitude.
On appeal, defendants first argue the error in the description of the section does not render the written servitude agreement invalid. In support of their contention, they cite Trahan v. Younger, 169 So.2d 15 (La.App. 2d Cir. 1964) and Burgas v. Stoutz, 174 La. 586, 141 So. 67 (La.1932). These cases stand for the proposition that any insufficiency of description in a servitude agreement as to the width, length or points of traverse of the right of way does not render the conveyance void for want of certainty if the grantee actually constructs the line on the land in accordance with the intent of the parties. Thus, defendants argue any uncertainty as to the location of the transmission lines was resolved once the structure was actually erected on Section 78.
In the case before us, the descriptive limits as to the width, length and points of traverse of the servitude are not in dispute. The only uncertainty involved is the determination of the proper section intended by the parties to the agreement. We recognize the rule that as between the parties to a contract, either party is always permitted to correct any mutual error in the instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties. This rule, however, gives way once the rights of third parties have intervened. Reynaud v. Bullock, 195 La. 86, 196 So. 29 (La.1940); Dixon v. Schockley, 356 So.2d 96 (La.App. 1st Cir. 1978). Under our Public Records Doctrine, plaintiffs were entitled to rely solely on what was found in the records, or, more precisely, on the absence of any recorded servitude on Section 78, notwithstanding actual notice to the contrary. McDuffie v. Walker, 125 La. 152, 51 So. 100 (La.1909). We therefore agree with the trial judge's finding that the recordation of the right of way deed did not create a valid servitude on Section 78 as to the plaintiffs.
*33 Defendants next argue they own a servitude for the line by virtue of the St. Julien doctrine. Under this rule, established in St. Julien v. Morgan Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883), a public or quasi-public corporation having expropriatory powers can acquire a servitude over the land of another where the landowner consents or acquiesces in the construction of facilities for a public purpose. The landowner is precluded from reclaiming his property and is limited to an action for compensation for the value of the property taken and damages, both determined as of the date of the taking. Veillon v. Columbia Gulf Transmission Company, 192 So.2d 646 (La.App. 3rd Cir. 1966); A. K. Roy, Inc. v. Board of Com's For Pontchartrain Levee District, 238 La. 926, 117 So.2d 60 (La.1960).
In Lake, Inc. v. LP&L, 330 So.2d 914 (La.1976), our Supreme Court, disenchanted with this extra-codal establishment of predial servitudes, overruled the St. Julien doctrine insofar as it applied to the acquisition of discontinuous servitudes. As in the present case, the Lake decision involved an electric transmission power line which, the Court stated, is a discontinuous apparent servitude. See Nash v. Whitten, 326 So.2d 856 (La.1976).
The district court, in its written opinion, held the St. Julien doctrine inapplicable to the facts of this case in light of the Lake decision. However, in Lake the Supreme Court expressly stated that its ruling was to be applied prospectively only, affecting conduct occurring after the finality of the Lake judgment. Here the transmission line was constructed in the early 1950s. Thus, the present case is clearly unaffected by the Lake decision. Plaintiffs' claim must be decided under St. Julien.
We note that in 1976 the legislature enacted R.S. 19:14 (Act 504 of 1976) in response to the Lake decision. That statute provides in pertinent part:
"In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title.
Added by Acts 1976, No. 504, § 1."
Two court of appeal decisions and several legal scholars have expressed the opinion Act 504 of 1976 reinstates the St. Julien doctrine with slight variations. Trustee Corporation v. Allen, 359 So.2d 715 (La.App. 4th Cir. 1978); Brooks v. New Orleans Public Service, 370 So.2d 686 (La.App. 4th Cir. 1979), writ denied 373 So.2d 512; A.N. Yiannopolous "The Work Of The Louisiana Appellate Courts for the 1975-76 Term: Property," 37 La.L.Rev. 317 at 326 (1977); Comment, 51 Tul.L.Rev. 375 (1977); Note, 22 Loy.L.Rev. 1066 (1976). Nevertheless, regardless of whether, or the extent to which, Act 504 of 1976 reinstates the St. Julien doctrine, that doctrine applies in the present case because the Supreme Court's decision in Lake is prospective only.
One of the requirements for application of the St. Julien doctrine is acquiescence by the landowner to the construction of the facility. Plaintiffs contend neither they nor their author in title, Mrs. Schuman, were aware of or acquiesced in the construction of the power line on the property.
As to Mrs. Schuman, this argument clearly has no merit. The evidence discussed above shows Mrs. Schuman actually signed a servitude agreement for the power line, *34 but through error the document stated the line was to be constructed across Section 77 when, in fact, it was constructed across Section 78. Defendants' witness, Mr. Holly, testified he had been employed by LP&L in Natchitoches Parish since 1950, and that pursuant to the right of way agreement signed by Mrs. Schuman the power line was actually constructed in 1950 on Mrs. Schuman's land in Section 78 and that there had been no objection or question by Mrs. Schuman as to the construction or maintenance of the line from 1950 until she sold the land to Mr. Henry in 1976, a period of over 26 years. Mr. Ponder, also an employee of LP&L, testified that he actually obtained the right of way agreement from Mrs. Schuman in 1950, and that he recognized his signature as well as that of Mrs. Schuman. Mr. Ponder stated he negotiated with Mrs. Schuman the location of the line, and that it was built in the location to which she agreed. We conclude the evidence is clear that Mrs. Schuman consented and acquiesced in the construction and the maintenance of the power line.
It is not perfectly clear from plaintiffs' brief whether they argue that even if Mrs. Schuman did acquiesce, it is also necessary that plaintiffs acquiesced after they purchased the property in 1976. If such an argument is being made, we reject it. In the early case of Webster Sand, Gravel & Construction Company v. Vicksburg S&P Railway Company, 129 La. 1096, 57 So. 529 (1912), the court held that the railway company having constructed its track with the consent or acquiescence of the owner at the time of construction, subsequent owners took the property subject to the servitude, even if it was unrecorded. See also Perret v. Louisiana Southern Railway Company, 118 So.2d 510 (Orl.App.1960). Although several cases have discussed the acquiescence on the part of the owner of the land subsequent to the time the facility was constructed, it appears that these discussions are simply to support the finding that there had been no opposition to the construction or maintenance for many years. See for instance Gumbel v. New Orleans Terminal Company, 186 La. 882, 173 So. 518 (1937). We find no case holding that where the owner at the time of construction acquiesces, the acquiescence of the subsequent owner who files the suit is also necessary.
Having concluded St. Julien is applicable, the next question is whether plaintiffs are entitled to compensation and damages from defendants for the taking of the servitude. This question was recently examined in Brooks v. New Orleans Public Service, 370 So.2d 686 (La.App. 4th Cir. 1979), a case somewhat similar to the present one. In Brooks, the court stated:
"... an essential element of the St. Julien doctrine was that the right to compensation is a right personal to the owner of the property at the time the servitude is taken. Because the right does not attach to the land, it can be conveyed only by express subrogation from the vendor to the vendee. Without an express transfer, one who buys property subject to a St. Julien appropriation has no right of action. (for compensation). Gumbel v. New Orleans Terminal Company, supra, and cases cited therein."
The Gumbel decision referred to is 197 La. 439, 1 So.2d 686 (1941), the last of the three Gumbel cases, which cites several previous cases for the same rule.
There is no evidence in the record that Mrs. Louise Schuman expressly subrogated her right to compensation to plaintiffs. Accordingly, plaintiffs are not entitled to compensation.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of defendants dismissing plaintiffs' suit at their cost in the trial and appellate courts.
REVERSED AND RENDERED.